Stacy HOWARD *v.* Clewester WISEMON, Jr.

CA 91-131                                        826 S.W.2d 314

Court of Appeals of Arkansas
En Banc
Opinion delivered April 1, 1992

*Baim, Gunti, Mouser, DeSimone, & Robinson,* by: *Judith A. DeSimone,* for appellant.

*William McNova Howard, Jr.,* for appellee.

MELVIN MAYFIELD, Judge. The issue in this case is the amount the appellee should be required to pay for the support of his minor daughter.

The appellant is the mother of the child who was 13 years old at the time of the hearing. The appellant contends that the chancellor clearly abused his discretion in failing to apply the rebuttable presumption that the amount of child support con-

tained in the family support chart is the correct amount. The brief makes it clear that the appellant is referring to the chart found in the Arkansas Supreme Court's per curiam of February 5, 1990. *See In Re: Guidelines for Child Support Enforcement*, 301 Ark. 627, 784 S.W.2d 589 (1990).

The appellee father was directed by a court order entered on December 19, 1979, to pay $50.00 per month for support of the child whose support is the subject of this appeal. The appellant started the instant case by filing a petition on July 23, 1990, asking that the child support be increased. The first thing to be noticed is the provision of the Supreme Court's per curiam which states:

> In determining requested modifications of child support orders entered prior to the effective date hereof, the trial court should consider the totality of the present circumstances of the parties and avoid modifications that would work undue hardship on the parties or any persons presently dependent thereon.

301 Ark. at 630. It is clear that the above provision applies to the instant case.

The record shows that the appellee was found to be the father of the child here involved after a hearing on a complaint filed in December of 1979. The complaint stated that the child was born out of wedlock, and the appellee was ordered to pay $50.00 per month support. According to the mother, this amount was paid fairly regularly from 1979 up to the date the petition to modify was filed in July of 1990. That petition asked for an arrearage of $90.00; however, the court determined from the evidence that the proper arrearage was $910.00 and ordered that amount to be paid at the rate of $15.00 per month. This is in addition to the increase from $50.00 per month to $30.00 per week ordered by the court, plus the provision that the appellee father should pay one-half of the child's "medical, dental, orthodontic, optometric, and prescription expenses."

At the hearing on November 14, 1990, the appellee introduced a pay stub into evidence showing that his pay for a week in September of 1990 was $273.00. This included two hours overtime, and the stub showed deductions for taxes and social

security in the amount of $62.81, leaving his net pay at $210.63 for the week. He testified that he was married and living with his wife and three children, two of which were his. He said his monthly expenses were $1,461.83. Included in this amount was $511.83 for mortgage payments on the house in which appellee and his wife lived. The house, however, belonged to the wife. She had a gross income of about $14,500.00 per year.

The appellant testified that her child is older now and needs more money for support. The appellant makes $186.00 per week gross. Deductions are $64.41 leaving a net weekly income of $121.59. She listed monthly living expenses of $395.83, and said she is in bankruptcy.

The chancellor found that appellee had a weekly income in the amount of $210.00, and the chart called for $51.00 per week child support. He stated the statutes and supreme court rules required support in the amount set out in the chart unless there was some reason to alter that amount. He stated the chart would quadruple appellee's payments and, considering his expenses, it would be devastating to increase by four times the amount of his support payments. Therefore, the chancellor said he was going to increase the weekly payment to $30.00 instead of $51.00. The court's written order also contained essentially the same findings.

We affirm the trial court. Its order followed the requirements and applied the rules set out in the supreme court's per curiam of February 5, 1990. That per curiam states, as to modification of orders entered prior to the per curiam, that the court "should consider the totality of the present circumstances of the parties and avoid modifications that would work undue hardship on the parties or any persons presently dependent thereon." 301 Ark. at 630.

The appellant's net income of $121.00 per week (about $484.00 per month) is a little more than her monthly expenses of $395.83. She will get an additional $120.00 per month from the increased child support payments, plus $15.00 per month until the $910.00 arrearage is paid. Appellee's expenses of $1,461.83, when reduced by his $511.83 house mortgage (for which he is liable but which makes payments on the house owned by his wife), leaves his monthly expenses at $950.00. Added to that will be an increase in support payment to appellant. His net income is only

$840.00 per month and this will not meet his expenses. His wife will obviously have to pay part of these expenses to help support him, their two children, and the one child of her own.

In *Stewart* v. *Winfrey*, 308 Ark. 277, 824 S.W.2d 373 (1992), the Arkansas Supreme Court said:

> After figuring the child support amount under the chart, a chancellor has the discretion to adjust the amount if equitable and if written findings are made to that effect. In making the decision, the chancellor can consider a parent's ability to pay. This would necessarily include a consideration of other children the parent is legally obligated to support.

308 Ark. at 284.

Under the law and the evidence, we cannot say the findings of the chancellor are clearly erroneous.

Affirmed.

ROGERS, J., dissents.

JUDITH ROGERS, Judge, dissenting. I do not agree with the majority's statement of the law that a chancellor may consider the non-custodial parent's ability to pay in setting the amount of child support. In a similar vein, I also cannot disagree with the majority's reference that courts should avoid modifications that work undue hardship. However, I do not agree that these principles apply under the facts of this case. To the contrary, this case is illustrative of the problems that the federal legislation, our legislation, and the *per curiam* decisions of our supreme court were designed to redress. The law has always recognized that a non-custodial parent has an obligation and a duty to support his or her children. The most recent legislation on this issue was enacted to gain a degree of uniformity and to ensure that the amount of support ordered is at least adequate to provide for the needs of the child. The legislation also has an eye towards enforcement. To these ends, Ark. Code Ann. § 9-12-312(a)(2) (Supp. 1991) provides that the court *shall* refer to the most recent revision of the family support chart, and that there is a rebuttable presumption that the amount reflected on the chart is the correct amount. This statute does allow deviations from the chart

amount, but only if the amount so reflected is deemed unjust or inappropriate. My departure from the majority's decision in this case is that I firmly believe that the reasons announced by the chancellor provide an unsatisfactory basis upon which to alter the chart amount.

Here, we are presented with a custodial mother who has been receiving $50 a month since the thirteen-year-old child was an infant. She has supported herself and the child by sometimes working at two or three jobs. She now has another six-month-old child to support and, understandably, she has sought relief in our courts. Appellant testified:

> With regard to her personal needs, I have not yet bought a winter coat. He shoes run anywhere from $12-$13.00 a pair, to a pair that will last her (at size nine) for a decent amount of time, running from $30.00 to $40.00. That is including tennis, regular school shoes, which would normally be boots, and a pair of shoes for church. Regarding dresses, I have yet to find one under $25.00 to $32.00, which is the cheapest I have found lately. I have worked all of her life, two to three jobs to buy these things for her. At this point, I cannot work two full time jobs. I have worked from eight to four and four to twelve in the past. As far as necessities, her appetite is bigger now than when she was an infant, and it costs more to feed a thirteen year old. Again, I work only one job, and I am in a personal bankruptcy. These debts are included on my Affidavit of Financial Means, and these amounts are being covered by my own Chapter 13 plan. Because of the personal time just to physically watch and take care of my thirteen year old, I don't think that I would do anything else other than my full-time job of which I have worked for the last three years at this point, and I need help from Mr. Wisemon.

On the other hand, appellee has remarried and voluntarily lists the first and second mortgage of the home owned by his present wife as a reason for not following the chart amount. Appellee also includes other debts, but he refuses to provide the latest income tax figures and excuses this by stating that "my present wife refused to allow me to reveal these." When pressed, he guessed that his wife earns "somewhere to the nearest $1,000,

$13,000 to $15,000."

In setting the amount of support, the chancellor stated:

> The Court is looking at the chart. It has been established that this gentleman has income in the amount of $210.00 per week. The chart shows that amount would call for $51.00 per week in child support. The Court is required under the statutes and the rules set out by the Supreme Court to set the child support at that amount unless there is some reason to alter that amount. As I have indicated in the past, the Court does have a problem with, essentially, quadrupling anyone's child support at any given time. That is not to say there are not some other reasons that apply that obviously making any person pay four times in child support what he has been paying all along is going to have some kind of devastation on him. In addition, the bills outweigh what he has income. Now, I want to state for the benefit of Mrs. Howard, she is not responsible for that, but it is a situation that exists. I am going to increase the child support. I am going to reduce it from the $51.00 per week down to $30.00 per week in child support.

To summarize, the chancellor deviated from the chart amount because appellee, like most people, including appellant, has expenses to pay and because of his reluctance to quadruple the amount of past support. However, the chart amount is presumed to be correct amount of support, and I can hardly believe that the refusal to apply the chart amount can be justified on the ground that the non-custodial parent has been paying a minimal amount of support over the years. The bottom line in this case is that this court is allowing this faulty reason and the appellee's voluntarily assumed expenses to come before the interests of the child. I submit that these are neither cogent nor appropriate grounds to alter the chart amount. By sanctioning this departure from the support chart, this court is not applying the support chart as intended, and I fear that in time the chart's rebuttable presumption will become meaningless.