Mary RODRIGUEZ *v.* ARKANSAS DEPARTMENT of HUMAN SERVICES and Minor Children

03-1466                                                    200 S.W.3d 431

Supreme Court of Arkansas

Opinion delivered December 16, 2004

[Rehearing denied January 20, 2005.]

---

[3] The Missouri Court of Appeals made a similar holding in *Wise v. Crump*, 978 S.W.2d 1 (Mo. Ct. App. 1998).

*DeeNita D. Moak*, for appellant.

*Gray Allen Turner*, for appellee.

ANNABELLE CLINTON IMBER, Justice. Mary Rodriguez appeals from the Faulkner County Circuit Court's order terminating her parental rights as to two of her children, Rosalinda and Imelda Rodriguez. We affirm the circuit court.

Rosalinda and Imelda are the children of Mary and Arturo Rodriguez. Arturo resides in Mexico, but Mary, a citizen of the United States who was born in Ohio, currently resides in Damascus, Arkansas. On August 24, 2001, the Arkansas Department of Human Services (DHS) placed a 72-hour hold on Rosalinda and Imelda for their safety and protection due to the possible threat of Mary returning to Mexico with the children. Rosalinda and Imelda were removed from Mary's custody after DHS filed a petition for emergency custody. An affidavit by a DHS employee averred that Mary was not providing the children with a proper education, as Mary home schooled the children with a questionable curriculum that she called "Phonics." Additionally, the affidavit stated that the house was "full of fleas, mice, rodents, [and other] animals, and was piled with trash," and one child suffered an ear infection that remained untreated because Mary was afraid of taking the child to the doctor for fear of the records being used by DHS to trace and locate the children.

On August 27, 2001, the Juvenile Division of the Faulkner County Circuit Court entered an emergency order, placing custody of the children with DHS. Following Mary's waiver of a probable cause hearing, the circuit court entered a probable cause order on September 25, 2001. In the order, the court awarded temporary custody to Paula Sullivan, the children's older half-sister; directed DHS to develop an appropriate case plan for the children and family; and authorized DHS to arrange supervised visitation with Mary and to provide a Spanish interpreter[1] during the visits so as to assure that no inappropriate communications occurred between Mary and the children. In a review order entered on December 5, 2001, the circuit court ordered Mary to

---

[1] Mary and both the children are bilingual in Spanish and English.

undergo a psychological evaluation by Dr. Paul DeYoub, a clinical psychologist. Another review order dated February 27, 2002, found that the case plan, services, and placement of the children met their needs and interests. In addition, the court concluded that DHS no longer had to provide a Spanish interpreter for visitation, that DHS was relieved of providing services to Mary other than visitation, and that Mary was prohibited from making phone calls to Paula Sullivan's home where the children resided. A permanency planning hearing was scheduled for April 9, 2002. On August 30, 2002, following its determination that DHS had complied with the terms of the case plan by making reasonable efforts to deliver reunification and permanency services to Mary, the circuit court accepted DHS's amended permanency plan to terminate her parental rights. Shortly thereafter, on September 17, 2002, DHS petitioned the circuit court to terminate Mary's parental rights; but, meanwhile, the circuit court placed the children in the temporary custody of relatives who reside in other states.[2] On November 22, 2002, the circuit court terminated the parental rights of Mary and Arturo.

Mary initially appealed to the Arkansas Court of Appeals. The court of appeals reversed the circuit court's order terminating Mary's parental rights, holding that the circuit court "erred in determining that Mary's due process rights afforded by the statutorily-required case plan had not been violated, even though the case plan was not introduced into evidence." The court of appeals reasoned that it was unable to review whether Mary's due process rights were violated because DHS failed to introduce the case plan as part of the record below. The court of appeals further held that admission of the psychological report, prepared by Dr. DeYoub, was reversible error. Finally, the court of appeals found that the circuit court relied on the report to make judgmental statements and to reach conclusions before the report was admitted into evidence. This case comes to us by a grant of petition for review pursuant to Rule 2-4 of the Arkansas Rules of the Supreme Court.

■■ Upon a petition for review, we consider a case as though it had been originally filed in this court. *McCoy v. State*, 347

---

[2] The children's sister, Wendy Doran, resides in Louisiana; Mary's sister, Judy Keller, resides in Michigan.

Ark. 913, 69 S.W.3d 430 (2002). We recently set forth our standard of review in parental rights–termination cases:

> Arkansas Code Annotated section 9-27-341(b)(3) (Supp.1999) requires an order terminating parental rights be based upon clear and convincing evidence. *Larscheid v. Arkansas Department of Human Services*, 343 Ark. 580, 36 S.W.3d 308 (2001) (citing *Baker v. Arkansas Dept. of Human Servs.*, 340 Ark. 408, 12 S.W.3d 200 (2000)). Our law is well settled that when the burden of proving a disputed fact in chancery court is by clear and convincing evidence, the question that must be answered on appeal is whether the chancery court's finding that the disputed fact was proven by clear and convincing evidence was clearly erroneous. *Id.* (citing *J.T. v. Arkansas Dept. of Human Servs.*, 329 Ark. 243, 947 S.W.2d 761 (1997); *Anderson v. Douglas*, 310 Ark. 633, 839 S.W.2d 196 (1992)). Clear and convincing evidence is that degree of proof that will produce in the fact finder a firm conviction as to the allegation sought to be established. *Id.* In resolving the clearly erroneous question, we must give due regard to the opportunity of the chancery court to judge the credibility of witnesses. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Gregg v. Arkansas Dep't of Human Servs.*, 58 Ark.App. 337, 952 S.W.2d 183 (1997). Cases such as this are reviewed *de novo* on appeal. *Wade v. Arkansas Dep't of Human Servs.*, 337 Ark. 353, 990 S.W.2d 509 (1999).

*Dinkins v. Arkansas Dept. of Human Serv.*, 344 Ark. 207, 40 S.W.3d 286 (2001). *See also Wade v. Arkansas Dept. of Human Serv.*, 337 Ark. 353, 990 S.W.2d 509 (1999).

In the brief that Mary submitted to the Arkansas Court of Appeals, she raised only two points of error: first, that she was denied due process because DHS failed to comply with Ark. Code Ann. § 9-27-402(c)(5)(A)(2004); second, that the circuit court erred in admitting Dr. DeYoub's report into evidence. The briefs submitted to this court, however, are significantly different in that Mary has included four additional points on appeal.[3]

---

[3] These four additional points are as follows:

1. The trial court erred in admitting hearsay testimony of witnesses, irrelevant testimony of witnesses, and irrelevant exhibits.

■ We accept petitions for review pursuant to Rule 2-4 of the Arkansas Rules of the Supreme Court. This rule clearly states that, "[w]hen the Supreme Court grants a petition for review, the Clerk shall promptly notify all counsel and parties appearing pro se. Within two weeks of the notification, *fourteen additional copies of the briefs previously submitted to the Court of Appeals* shall be filed with the Clerk." Ark. Sup. Ct. R. 2-4(e) (2004) (emphasis added). In addition, our rule allows parties, after permission is granted, to file supplemental and reply briefs, but those may not exceed 10 pages in length. Ark. Sup. Ct. R. 2-4(f). While we did grant the parties permission to file supplemental and reply briefs and we granted Mary permission to file a substituted brief in order to cure deficiencies in her abstract and addendum, Ark. Sup. Ct. R. 4-2(b) (2004), this does not give Mary permission to raise points on appeal that were not originally submitted to the court of appeals for review. Accordingly, we decline to consider any point on appeal that was not originally submitted to the court of appeals.

In her first point on appeal, Mary contends that she was denied due process because DHS failed to comply with Ark. Code Ann. § 9-27-402 (c)(5)(A). This section states in pertinent part:

> (c) When the juvenile is receiving services in an out-of-home placement, the case plan must include at a minimum, in addition to the requirements in subsections (a) and (b) of this section:
>
> (5)(A) The specific actions to be taken by the parent, guardian, or custodian of the juvenile to eliminate or correct the identified problems or conditions and the period during which the actions are to be taken.

Ark. Code Ann. § 9-27-402(c)(5)(A). More specifically, Mary asserts that DHS failed to specify in the case plan the actions she needed to

---

2. The trial court erred in terminating the parental rights of appellant when no evidence was presented in the State's case in chief at the termination of parental rights hearing.

3. The trial court erred in denying appellant a hearing on the issue of placement prior to removing her children from the jurisdiction of the State of Arkansas to allow guardianships to be established in another jurisdiction.

4. The trial court erred in finding that there was sufficient evidence to terminate the parental rights of the appellant.

take to achieve reunification with her children, thereby denying her due process of law. In rebuttal, DHS suggests that Mary abandoned her due process argument on appeal because her *mere* assertion of a due process violation is not sufficient to preserve the point for appellate review.

■ First, this court cannot determine whether Mary's due process rights were violated based on the case plan's lack of specificity because we have no case plan in the record to review. While there is evidence in the record that a case plan existed, it is not included in the record before us. In the notice of appeal, Mary designated the "entire record" for the purpose of this appeal. Rule 3-1(n) of the Rules of the Arkansas Supreme Court specifically states what is meant by the term "record" for purposes of appeal: "The term 'record' in civil cases, and as used in these Rules, refers only to the pleadings, judgment, decree, order appealed, transcript, exhibits, and certificates." Ark. Sup. Ct. R. 3-1(n) (2004). Furthermore, according to the Rule 3-2, the record to be transmitted to this court by the circuit clerk shall "include all matters in the record as required by Rule 3-1(n)." Ark. Sup. Ct. R. 3-2 (2004). Thus, the "entire record" could be properly prepared and transmitted by the circuit clerk under our rules without including the case plan even though the plan had in fact been filed in accordance with Ark. Code Ann. § 9-27-402 (c)(5)(A).

■■ We have consistently said that it is the duty of the appellant to bring up an adequate record for our review. *Clowney v. Gill*, 326 Ark. 253, 929 S.W.2d 720 (1996); *City of Benton v. Arkansas Soil & Water Conservation Comm'n.*, 345 Ark. 249, 45 S.W.3d 805 (2001)(citing *Hankins v. Dept. of Fin. & Admin.*, 330 Ark. 492, 954 S.W.2d 259 (1997)). Failure to do so precludes our review. *Id.* As noted earlier, it is entirely possible that the case plan at issue here was filed but not included in the record because it was not introduced and admitted into evidence. If Mary believed that the case plan lacked specificity, it was her responsibility to support her claim by introducing the plan into evidence. The basis of such a claim would necessarily be the contents of the challenged document. In any event, even if the case plan was not properly filed below, the record before us does not reflect an objection to the lack of a filed case plan. Furthermore, Mary has cited no case law in support of her due process claim. Assignments of error unsupported by convincing argument or authority will not be

considered on appeal, unless it is apparent without further research that the point is well taken. *Hodges v. Lamora*, 337 Ark. 470, 989 S.W.2d 530 (1999).

Mary's second point on appeal is her claim that the court erred in admitting the report of Dr. DeYoub into evidence. While Mary initially objected to the report's admissibility as hearsay, the report was subsequently admitted into evidence without objection as part of a court report at the permanency planning hearing.

■ ■ To preserve an objection for appeal, a timely and appropriate objection must be made. *Leavy v. State*, 314 Ark. 231, 862 S.W.2d 832 (1993). When no objection is made, the argument that the evidence is inadmissible is not preserved for appeal. *Id.* However, even when a proper objection is initially made, to properly preserve the argument for appeal, the appellant must renew that objection when the appellee subsequently attempts to introduce the same evidence. *See Baker v. State*, 334 Ark. 330, 974 S.W.2d 474 (1998); *Mills v. State*, 321 Ark. 621, 623, 906 S.W.2d 674 (1995). Given the subsequent admission of the report by DHS, without objection by Mary, we hold that this issue was not preserved for our review on appeal, and we affirm the circuit court.

Affirmed.