Randy TUCKER  *v.*  Regina TUCKER
and Office of Child Support Enforcement

CA 05–1144                                          239 S.W.3d 532

Court of Appeals of Arkansas
Opinion delivered September 20, 2006

*Tripcony Law Firm, P.A.*, by: *Heather M. May*, for appellant.

G. *Keith Griffith*, for appellee.

WENDELL L. GRIFFEN, Judge. Randy Tucker appeals from the order of the Pope County Circuit Court that increased his child-support obligation from $45 per week to $1,809.92 per month, based on a net-worth approach, and argues three points for reversal. Office of Child Support Enforcement (OCSE) cross-appeals from the trial court's refusal to make the modification retroactive to the date of the filing of the petition for modification. We affirm on the direct appeal and reverse and remand on the cross-appeal.

Tucker and his ex-wife, appellee Regina Tucker, were divorced by decree of the trial court on April 30, 1997. The decree awarded Regina Tucker custody of the parties' minor child and ordered Tucker to pay child support of $45 per week.

On October 2, 2003, OCSE intervened and filed a motion to modify Tucker's child-support obligation. The motion alleged that, since the entry of the decree in 1997, Tucker's income had increased by more than twenty percent or by more than $100 per month, thereby constituting a material change in circumstances. Tucker denied the material allegations of the motion.

A hearing was held on March 16, 2005. William Lawton, a certified public accountant, testified that he reviewed Tucker's tax returns and other information as requested by OCSE. From that information, he prepared a worksheet showing Tucker's monthly expenses to be $8,084. He also said that Tucker's 2003 Schedule C appeared reasonable, but that it could be used to hide income. According to Lawton, it appeared that Tucker paid his personal living expenses out of his business accounts. He also testified that Tucker may be living on borrowed money because his liabilities (such as loans and lines of credit) increased dramatically over the past five years.

Randy Tucker testified that he was a self-employed contractor and that he had been in the business since 1997. He acknowledged that his financial situation had "substantially changed" since that time. Tucker testified that he paid all of his bills, both business and personal, at the end of each month and that, if he needed money to make the payments, he drew from one of three bank loans or two lines of credit for his business. He also had three credit

cards that he used for both business and personal expenses. He stated that he updated his financial statements with the banks at the start of every year and periodically throughout the year, such as when he was going to purchase property for development as a subdivision. Tucker stated that the banks had a lot of faith in his ability to repay the debt.

Tucker listed his family's monthly expenses as $4,101 and explained that, after his wife's contributions, he needed to contribute $576 per week to meet the monthly expenses. He said that he tithed approximately $20,000 per year to his church, which was more than ten percent of his income, and that this figure was based on what he made three or four years prior to trial. In an answer to interrogatories, Tucker listed seven vehicles he owned, including two tractors and two all-terrain vehicles. He also testified that he owned two boats, purchased on the lines of credit. He denied having a lavish lifestyle, stating that, other than going to Branson to purchase school clothes, he had taken only one vacation in the last four years.

Ricky Taylor, Tucker's certified public accountant, testified that he generated a worksheet showing Tucker's 2003 net income as $509.46 per week, not including losses from Tucker's farming operation. He said that the calculation of Tucker's expenses was based on averages of what he spent each month, as well as the tax returns. He confirmed that Tucker paid all of his bills, business and personal, once a month, from one of his lines of credit, adding that he did not believe that Tucker made as much as he spent.

The trial court issued a letter opinion announcing its decision on July 15, 2005, in which it found that there was a material change in circumstances. The court found that there were discrepancies between Tucker's testimony and his tax returns to the extent that use of the returns to compute Tucker's income and child-support obligation would be unreliable. The court then proceeded to use the net-worth approach found in *Holland v. United States*, 348 U.S. 121 (1954). In using such an approach, the trial court relied on three financial statements, dated August 2003, April 15, 2004, and January 19, 2005, that Tucker issued to banks in the ordinary course of business. The court found that Tucker's net worth had increased by $214,000 over that period and calculated Tucker's average monthly income, after excluding income from Tucker's current wife, to be $12,066.11. Because Tucker's income exceeded the child-support chart levels, the court applied the child-support guidelines' percentage for one child (15%), to

arrive at a monthly obligation of $1,809.92. The court made the modification retroactive to January 19, 2005, instead of October 3, 2003, as sought by OCSE, because there was no proof offered to enable the court to conduct a net-worth analysis for the two-year period prior to the petition's filing. This resulted in an arrearage judgment of $9,689.52. Tucker was to pay this arrearage off at the rate of $200 per month. Judgment was entered accordingly.

Tucker argues three points on appeal: (1) that the trial court erred in disregarding his tax returns and applying Internal Revenue Code standards and procedures in determining his disposable income for child-support purposes; (2) that, if the net-worth approach in determining child support is used, this court should clarify or modify the method used by the trial court because it did not present the entire picture, and because the standards and procedures used produced erroneous and unreliable results; and (3) that the trial court erred in awarding an increase in support because such a ruling is clearly contrary to the preponderance of the evidence and creates an undue hardship on Tucker. On cross-appeal, OCSE argues that the trial court erred in not making the modification retroactive to October 2, 2003, the date the motion for modification was filed.

Child-support cases are reviewed de novo on the record. *Cole v. Cole*, 89 Ark. App. 134, 201 S.W.3d 21 (2005). It is the ultimate task of the trial judge to determine the expendable income of a child-support payor. *Id.* This income may differ from income for tax purposes. *See id.*; *Brown v. Brown*, 76 Ark. App. 494, 68 S.W.3d 316 (2002). As a rule, when the amount of child support is at issue, the appellate court will not reverse the trial judge absent an abuse of discretion. *McWhorter v. McWhorter*, 346 Ark. 475, 58 S.W.3d 840 (2001); *Cole, supra.*

Although Tucker argues that the trial court erred in disregarding his tax returns and applying Internal Revenue Code standards and procedures in determining his disposable income for child-support purposes and contends that the trial court has no discretion to ignore the tax returns, we disagree. The net-worth approach is specifically authorized by the guidelines.

Administrative Order Number 10, Section III(c), concerning child-support guidelines, provides that, for self-employed payors,

> support shall be calculated on the last two years' federal and state income tax returns and on the quarterly estimates for the current

> year. A self-employed payor's income should include contribu-
> tions made to retirement plans, alimony paid and self-employed
> health insurance paid. . . . Depreciation should be allowed as a
> deduction only to the extent that it reflects actual decrease in value
> of an asset. Also, a *court shall consider the amount the payor is capable of
> earning or a net worth approach based on property, life style, etc.*

(Emphasis added.) Thus, by the plain terms of Administrative Order No. 10, a trial court is *required* to consider, in addition to a self-employed payor's tax returns, either his capacity to earn or a net-worth analysis based on factors such as the payor's lifestyle and property. However, a net-worth analysis should not be used inter-changeably with a payor's tax returns. Rather, the net-worth method should be used only after a finding that the returns are unreliable. The trial court made such a finding in the present case.

Tucker also argues that, because the *Holland* Court recog-nized that the net-worth method was fraught with dangers, that method should not be used in calculating income for child-support purposes. However, the dangers to which the Court was alluding concern its use in criminal cases rather than any inherent flaws in the method itself. We cannot say that the trial court abused its discretion in calculating Tucker's income by the net-worth method.

In his second point, Tucker contends that, if the net-worth method in determining child support is used, this court should clarify or modify the method used by the trial court because it did not present the entire picture and because the standards and procedures it used produced erroneous and unreliable results. We disagree. We are not required to adopt a specific net-worth analysis or set of factors to be used in such an analysis in order to affirm the trial court in this case. As set forth in *Holland*, the net-worth method involves establishing a beginning net worth at the start of the relevant period and an ending net worth at the end of the relevant period, and considers living expenses and allowable de-ductions for the same period. 348 U.S. at 125. Tucker offers no persuasive argument why the same method cannot be used to establish the expendable income of a child-support payor. Nor does he point to any specific errors in the use of that method.

Tucker argues that the trial court should take into account certain items such as depreciation and the fact that he is living on borrowed money. However, these items presumably *are* consid-ered in the net-worth approach. Any depreciation to vehicles or

equipment is taken into account over time as the value of the assets declines. The amount of depreciation deduction to be allowed is within the discretion of the trial court. *Gray v. Gray*, 67 Ark. App. 202, 994 S.W.2d 506 (1999). Likewise, the use of loans and other forms of credit is also considered in a net-worth approach because the amount of the loan indebtedness, along with all other liabilities, is deducted from the value of Tucker's assets in arriving at his net worth.

Finally, Tucker argues that the trial court's ruling is clearly contrary to the preponderance of the evidence and creates an undue hardship on him. The first part of the argument is simply a re-argument of the earlier points that the net-worth approach used by the trial court ignored the tax returns and did not consider certain deductions. As such, it need not be addressed. In the second part of the argument, Tucker, citing *Howard v. Wisemon*, 38 Ark. App. 27, 826 S.W.2d 314 (1992), argues that the amount of the increase in child support is "devastating" to his family and his business. However, he did not make this argument below. We do not address arguments made for the first time on appeal. *Sweeden v. Farmers Ins. Group*, 71 Ark. App. 381, 30 S.W.3d 783 (2000).

On cross-appeal, OCSE argues that the trial court erred by not making the modification retroactive to October 3, 2003, the date the petition was filed. This issue is reviewed for an abuse of discretion. *Heflin v. Bell*, 52 Ark. App. 201, 916 S.W.2d 769 (1996). Arkansas Code Annotated section 9-14-107(d) (Supp. 2005) provides that "[a]ny modification of a child-support order that is based on a change in gross income of the noncustodial parent *shall* be effective as of the date of filing a motion for increase or decrease in child support, *unless otherwise ordered by the court.*" (Emphasis added.)

The trial court decided not to make the modification retroactive to the date of the petition because, in its view, there was no evidence that enabled it to calculate Tucker's income for the two-year period prior to the petition's filing. This view is erroneous. First, there was evidence of the change in Tucker's income that predated the filing of the petition in the form of financial statements from January 2003 and earlier; however, that evidence was not necessary to perform a net-worth analysis. Second, the trial court's reasoning that the net worth was not established until January 19, 2005, is inconsistent with using *each* month within the relevant period to determine the average increase in net worth. It

is true that Tucker's *full* increase in net worth was not "realized" on his financial records until January 19, 2005, but he presumably enjoyed the benefits of the *incremental* increases in his income during the months in which they arose.

Thus, logic dictates that the averaging of the increased net worth over the entire calculation period must mean that the average increase applied to each month within the calculation period. To hold otherwise would penalize the child by denying increased support for a period of time in which Tucker actually enjoyed the benefits of his increased net worth, even if that increase did not materialize "on the books" until a later date. Therefore, we reverse the trial court's decision concerning the effective date of the modification and remand the case to the trial court with instructions to the trial court to enter an order making the modification retroactive to October 3, 2003.

Affirmed on direct appeal; reversed and remanded on cross-appeal.

ROBBINS and CRABTREE, JJ., agree.