Randy TUCKER *v.* ARKANSAS OFFICE of
CHILD SUPPORT ENFORCEMENT and
Regina L. Tucker

06-1143                                    247 S.W.3d 485

Supreme Court of Arkansas
Opinion delivered January 18, 2007

*Tripcony Law Firm, P.A*, by: *Heather M. May*, for appellant.

G. *Keith Griffith*, Office of Child Support Enforcement, for appellee.

JIM HANNAH, Chief Justice. Appellant Randy Tucker appeals from an order of the Pope County Circuit Court that increased his child-support obligation from $45 per week to $1,809.92 per month, based on a net-worth approach. Appellees Regina Tucker and the Office of Child Support Enforcement (collectively referred to as OCSE) cross-appeal from the circuit court's refusal to make the modification retroactive to the date of the filing of the petition for modification. Randy originally appealed to the court of appeals. The court of appeals affirmed the increase in child support on direct appeal, and reversed the order on cross-appeal, making the increase retroactive to the date of the filing of the motion for modification. *See Tucker v. Tucker*, 96 Ark. App. 194, 239 S.W.3d 532 (2006). Randy petitioned this court for review, which we granted pursuant to Ark. Sup. Ct. R. 2-4. Upon the grant of a petition for review, we consider the case as though it had been originally filed in this court. *Rodriguez v. Ark. Dep't of Human Servs.*, 360 Ark. 180, 200 S.W.3d 431 (2004). We affirm on direct appeal, and we reverse and remand on cross-appeal.

*Facts*

Randy and Regina were divorced by decree of the circuit court on April 30, 1997. The decree awarded Regina custody of the parties' minor child and ordered Randy to pay child support of $45 per week.

On October 2, 2003, OCSE intervened and filed a motion to modify Randy's child-support obligation. The motion alleged that, since the entry of the decree in 1997, Randy's income had increased by more than twenty percent or by more than $100 per month, thereby constituting a material change in circumstances.

A hearing on the motion was held on March 16, 2005. William Lawton, a certified public accountant, testified that he reviewed Randy's tax returns and other information as requested by OCSE. From that information, he prepared a worksheet showing Randy's monthly expenses to be $8,084. He also stated that Randy's 2003 Schedule C appeared reasonable, but that it could be used to hide income. Lawton said that it was reasonable to believe that Randy paid his personal living expenses out of his business accounts. He also testified that Randy may be living on

borrowed money because his liabilities, such as loans and lines of credit, had increased dramatically over the past five years.

Randy testified that he was a self-employed contractor, that he had been in the business since 1997, and that his financial situation had "substantially changed" since that time. Randy stated that he paid all of his bills, both business and personal, at the end of the month and that, if he needed money to make the payments, he drew from one of three bank loans or two lines of credit for his business. Randy testified that he had three credit cards that he used for both business and personal expenses. He said that he submitted updated financial statements to the banks at the beginning of every year and periodically throughout the year. Further, he testified that the banks had a lot of faith in his ability to repay debt.

The record shows that Randy listed his family's monthly expenses as $4,101, and that after his current wife's contributions, he needed to contribute $576.67 per week to meet the monthly expenses. He testified that he tithed approximately $20,000 per year to his church, which was more than ten percent of his income. In response to interrogatories, Randy listed seven vehicles he owned, including two tractors and two all-terrain vehicles. He also testified that he owned two boats, purchased on the lines of credit. Randy stated that, aside from taking his kids to Branson each year to purchase school clothes, he had only been on one vacation in the past four years.

Ricky Taylor, Randy's certified public accountant, testified that he generated a worksheet showing Randy's 2003 net income as $509.46 per week, not including losses from Randy's farming operation. He said that the calculation of Randy's expenses was based on averages of what he spent each month, as well as tax returns. Taylor confirmed that Randy paid all of his bills, business and personal, once a month, from one of his lines of credit. Further, Taylor stated that, based on his discussions with Randy and a review of the financial documents, he did not believe that Randy made as much money as he spent.

The circuit court issued a letter opinion on July 15, 2005, in which it found that the OCSE had met its burden of proving that there was a material change of circumstances since the entry of the child-support order in 1997. Further, the circuit court found that Randy was self-employed and that his tax returns were unreliable for the purpose of determining his income upon which a modification of child support could be based. The circuit court then

proceeded to use the net-worth approach found in *Holland v. United States*, 348 U.S. 121 (1954). In using this approach, the circuit court relied on three financial statements, dated August 2003, April 15, 2004, and January 19, 2005, that Randy issued to banks in the ordinary course of business. The circuit court found that Randy's net worth had increased by $214,000 over that period and calculated Randy's average monthly income, after excluding income from Randy's current wife, to be $12,066.11. Because Randy's income exceeded the child-support chart levels, the court applied the child-support guidelines' percentage for one child, 15%, to arrive at a monthly obligation of $1,809.92. The circuit court made the modification retroactive to January 19, 2005, instead of October 3, 2003, as sought by OCSE, finding that there was no proof offered to enable the court to conduct a net-worth analysis for the two-year period prior to the petition's filing. This resulted in an arrearage judgment of $9,689.52, which Randy was ordered to pay at the rate of $200 per month.

On appeal, Randy argues: (1) that the circuit court erred in disregarding his tax returns and applying the Internal Revenue Code standards and procedures in determining his disposable income for child support; (2) that if the court follows the net-worth method of determining child support, then it should clarify or modify the method used by the circuit court because it did not present the entire picture and because the standards and procedures used produced erroneous and unreliable results; and (3) that the circuit court erred in awarding an increase in support because such a ruling is clearly contrary to the preponderance of the evidence and creates an undue hardship on Randy. On cross-appeal, OCSE argues that the circuit court erred in not making modification retroactive to October 3, 2003.

### Standard of Review

Recently, in *Hill v. Kelly*, 368 Ark. 200, 207, 243 S.W.3d 886, 890 (2006), we stated:

> Our standard of review for an appeal from a child-support order is de novo on the record, and we will not reverse a finding of fact by the circuit court unless it is clearly erroneous. *Ward v. Doss*, 361 Ark. 153, 205 S.W.3d 767 (2005). A finding is clearly erroneous when the reviewing court, on the entire evidence, is left with a definite and firm conviction that a mistake has been made. *Akins v. Mofield*, 355 Ark. 215, 132 S.W.3d 760 (2003). We give due deference to the

trial court's superior position to determine the credibility of the witnesses and the weight to be given their testimony. *Id.* In a child-support determination, the amount of child support lies within the sound discretion of the trial court, and the lower court's findings will not be reversed absent an abuse of discretion. *Id.* However, a trial court's conclusions of law are given no deference on appeal. *Id.*

### Net-Worth Approach

Randy first argues that the circuit court erred in disregarding his tax returns and applying the IRS Code standards and procedures in determining his disposable income for child support. Arkansas Supreme Court Administrative Order No. 10 sets forth the guidelines for determining child support. At issue in this case is Section III(c) of Administrative Order No. 10, which provides in relevant part:

> For self-employed payors, support shall be calculated based on the last two years' federal and state income tax returns and the quarterly estimates for the current year. A self-employed payor's income should include contributions made to retirement plans, alimony paid, and self-employed health insurance paid; this figure appears on line 22 of the current federal income tax form. Depreciation should be allowed as a deduction only to the extent that it reflects actual decrease in value of an asset. *Also, the court shall consider the amount the payor is capable of earning or a net worth approach based on property, life-style, etc.*

(Emphasis added.)

Randy argues that, because his tax returns were available, the circuit court clearly erred in relying on net-worth figures alone. The letter opinion reflects that the circuit court began its analysis by considering Randy's tax returns. The circuit court found:

> Defendant's 2003 tax return indicates a loss of $11,423 on the first page line #34. However, Schedule A of said return reflects expenditures of $34,275 as itemized deductions. Mr. Rick Taylor, testifying on behalf of the Defendant, stated that based on the 2003 tax return the Defendant receives from his construction business a net weekly income of $509.46. Defendant testified that he contributes $400 per week to his church. [OCSE] asserts that, in addition to this inconsistency which demonstrates Defendant's true income

cannot be evaluated by reference to his tax returns, there is commingling of income/expense information between his personal and business standing. Indicative of [OCSE's] position is the Defendant's use of the 2003 Chevrolet pickup. In Defendant's answer to Interrogatory #4 the Defendant stated that of the vehicles owned, only the 2004 Jeep is driven by his wife, and he instead drives the 2003 Chevrolet pickup for both business and personal use. However, the 2003 tax return at page 20 of the Exhibit the Defendant claims the 2003 Chevrolet is used 100% of the time for business purpose[s].

Taking the income tax records for the past two years and their comparison with the testimony of the Defendant, this Court finds that the inconsistencies render the tax records unreliable for the purpose of determining the Defendant's child support obligation, and therefore, this Court determines that deviation from Administrative Order No. 10 with regard to calculation of support being based on the last two years' federal and state income tax returns is necessary, and support shall be determined utilizing the "net worth approach based on property, life-style, etc." as said phrase is found in Administrative Order No. 10. It should also be noted that the Defendant's testimony with regard to his attempts to convince the Court of his dire financial situation, inability to afford additional child support, and attempt to explain the inconsistencies in his tax returns, that his testimony and demeanor on the stand was unconvincing and the Court found his statements in that regard less than credible.

Randy suggests in his brief on appeal that the circuit court wholly disregarded his tax returns. That is not the case. Rather, the circuit court first considered Randy's tax returns, and it was only after finding the tax returns unreliable that the circuit court proceeded to the net-worth approach, as allowed by Administrative Order No. 10. Further, to the extent that Randy is suggesting that the mere availability of the tax returns should require only their use in determining child support, we disagree. Available tax returns are of no use if they are unreliable. Here, after reviewing tax returns and hearing witness testimony, the circuit court found the returns to be unreliable. Inconsistencies arising from a comparison of tax returns and witness testimony are matters for the circuit court to resolve. It is well settled that we give due deference to the circuit court's superior position to determine the credibility of the witnesses and the weight to be given to their

testimony. *See, e.g., Akins v. Mofield,* 355 Ark. 215, 132 S.W.3d 760 (2003). We cannot say that the circuit court's finding that the tax records were unreliable is clearly erroneous.

■ Randy next argues that, because the *Holland* Court recognized that the net-worth method was fraught with dangers, that method should not be used in calculating income for child-support purposes. We disagree. The *Holland* case involved an appeal of a tax-evasion conviction. In discussing the net-worth approach in criminal cases, the Supreme Court stated:

> One basic assumption in establishing guilt by this method is that most assets derive from a taxable source, and that when this is not true the taxpayer is in a position to explain the discrepancy. The application of such an assumption raises serious legal problems in the administration of the criminal law. Unlike civil actions for the recovery of deficiencies, where the determinations of the Commissioner have prima facie validity, the prosecution must always prove the criminal charge beyond a reasonable doubt. This has led many of our courts to be disturbed by the use of the net worth method, particularly in its scope and the latitude which it allows prosecutors.

*Holland,* 348 U.S. at 126. Thus, the *Holland* Court warned of problems that might arise in *criminal* cases; the Court did not indicate any inherent flaws in the net-worth approach itself.

In his second point on appeal, Randy contends that, if the net-worth method is used in determining child support, this court should clarify or modify the method used by the circuit court because it did not present the entire picture and because the standards and procedures it used produced erroneous and unreliable results. As set forth in *Holland,* the net-worth method involves establishing a beginning net worth at the start of the relevant period and an ending net worth at the end of the period and considers living expenses and allowed deductions for the same period. *Id.* at 125. Randy fails to explain why the same method cannot be used to establish the expendable income of a child-support payor and, further, he fails to point to any specific errors in the use of that method.

■ Still, Randy contends that, in determining the amount of child support, the circuit court failed to take into account certain items such as depreciation and the fact that he is living on borrowed money. However, these items are considered in the

net-worth approach. Any depreciation to vehicles or equipment is taken into account over time as the value of the assets declines. In addition, the use of loans and other forms of credit is also considered in a net-worth approach because the amount of loan indebtedness, along with all other liabilities, is deducted from the value of Randy's assets in arriving at his net worth. In this case, we cannot say that the circuit court's use of the net-worth approach in determining Randy's disposable income is clearly erroneous.

### Financial Hardship

██ Finally, Randy argues that the circuit court erred in awarding an increase in child support because the ruling is contrary to the preponderance of the evidence and creates an undue hardship on him. As to Randy's argument concerning the preponderance of the evidence, he is simply rearguing his earlier points that the net-worth method used by the circuit court ignored the tax returns and did not consider certain deductions. We need not address this argument again. In support of his argument that the increase in child support will create an undue hardship on him, Randy cites *Howard v. Wisemon*, 38 Ark. App. 27, 826 S.W.2d 314 (1992), and contends that the amount of the increase in child support is "devastating" to his family and his business. However, the record reveals that Randy did not make this argument below. Randy's argument before the circuit court addressed what effect a retroactive judgment would have on him and his family; whereas on appeal, Randy argues that the increase in child support "by more than nine times the amount he was previously ordered to pay" is devastating to his family. It is well settled that an appellant may not change the grounds for objection on appeal but is limited by the scope and nature of his objections and arguments presented at trial. *See, e.g., City of Benton v. Ark. Soil & Water Comm'n*, 345 Ark. 249, 45 S.W.3d 805 (2001). For the foregoing reasons, we affirm on direct appeal.

Although we find no reversible error on direct appeal in the instant case, we do recognize that a clarification of the procedure for determining child support by using the net-worth method will provide guidance to the bench and bar in future cases. Pursuant to Administrative Order No. 10, Section III(c), for self-employed payors, the circuit court should first consider the last two years' federal and state income tax returns and the quarterly estimates for the current year. A self-employed payor's income should include

contributions made to retirement plans, alimony paid, and self-employed insurance paid. *Id.* Depreciation should be allowed only to the extent that it reflects actual decrease in value of an asset. *Id.*

If the circuit court determines that the tax returns are unreliable, then it shall make specific findings explaining the basis of its determination. The circuit court shall then proceed using the net-worth method. The circuit court shall establish a beginning net worth at the start of the relevant period and an ending net worth at the end of the period, considering living expenses and allowable deductions for the same period. *See Holland*, 348 U.S. at 125. Additionally, the circuit court shall consider the following factors: (1) the impact of inflation or deflation on the payor's net worth; (2) liquidity of the payor's assets; (3) the payor's cash flow; (4) the payor's current and long-term financial obligations; (5) the payor's lifestyle; and (6) any other relevant factors. After determining the payor's disposable income, the circuit court shall calculate child support in accordance with the child-support guidelines.

### Cross-Appeal: Effective Date of Modification

On cross-appeal, OCSE argues that the circuit court erred in making the modification effective January 19, 2005, instead of October 3, 2003, the date of the filing of the motion to modify.[1] Pursuant to Ark. Code Ann. § 9-14-107(d) (Supp. 2005), "[a]ny modification of a child support order that is based on a change in gross income of the noncustodial parent shall be effective as of the date of filing a motion for increase or decrease in child support unless otherwise ordered by the court." The circuit court's decision regarding the effective date of modified child support is reviewed for abuse of discretion. *See, e.g., McWhorter v. McWhorter*, 346 Ark. 475, 58 S.W.3d 840 (2001).

In its letter opinion, the circuit court stated:

> As set out above, in applying the net worth approach to determine the increase in Defendant's child support obligation, this Court utilized financial statements for a period from August 1, 2003, to January 19, 2005. The net worth approach in this case, and by the

---

[1] OCSE filed the motion on October 2, not on October 3; however, it requested that the modification be effective on October 3, the date of the next weekly payment after the filing of that motion. Accordingly, we refer to the filing date as October 3.

very nature of the calculation, looks to an incremental increase in the Defendant's net worth in this case concluding with the January 15, 2005, financial statement. To accept [OCSE's] position would result in a child support obligation on October 3, 2003, which would be based on a net worth that did not exist in its entirety until some sixteen months later. It is apparent from the documents presented and relied upon by this Court that an increase in net worth occurred. It is clear that the total amount of increase relied upon by this Court for setting the increase in support was not in existence on October 3, 2003. It is certain that the net worth relied upon by this Court was in place on January 19, 2005. Because [OCSE] provided no information which would support an analysis of increase in net worth for a two-year period prior to the filing of the Petition for Modification any retroactive application prior to the 19th day of January, 2005, would be done so without any reasonable degree of certainty, and therefore, is denied. The increase in support awarded hereon shall be retroactive to the date of January 19, 2005.

■ OCSE argues that the circuit court clearly erred in finding that there was no evidence that enabled it to calculate Randy's income for the two-year period prior to the filing of the petition for modification. We agree. The record reveals that there was evidence of the change in Randy's income that predated the filing of the petition in the form of financial statements from January 2003, August 2002, March 2002, and August 2000; however, that evidence was not necessary to perform a net-worth analysis. We agree with the following analysis by the court of appeals:

> [T]he trial court's reasoning that the net worth was not established until January 19, 2005, is inconsistent with using *each* month within the relevant period to determine the average increase in net worth. It is true that [Randy's] *full* increase in net worth was not "realized" on his financial records until January 19, 2005, but he presumably enjoyed the benefits of the *incremental* increases in his income during the months in which they arose.
>
> Thus, logic dictates that the averaging of the increased net worth over the entire calculation period must mean that the average increase applied to each month within the calculation period. To hold otherwise would penalize the child by denying increased support for a period of time in which [Randy] actually enjoyed the

benefits of his increased net worth, even if that increase did not materialize "on the books" until a later date.

*Tucker*, 96 Ark. App. at 199-200, 239 S.W.3d at 536-37. We hold that the circuit court abused its discretion in making the child support increase retroactive to January 19, 2005. Therefore, we reverse the circuit court's decision concerning the effective date of the modification and remand the case to the circuit court with instructions to enter an order making the modification retroactive to October 3, 2003.

Affirmed on direct appeal; reversed and remanded on cross-appeal.