SLIP OPINION

Cite as 2017 Ark. App. 132

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-16-478

| | | |
|---|---|---|
| MARTI JOHNSON | | **Opinion Delivered:** March 8, 2017 |
| | APPELLANT | APPEAL FROM THE PHILLIPS COUNTY CIRCUIT COURT [NO. 54DR–05–320] |
| V. | | |
| WILLIAM YOUNG | | HONORABLE CHRISTOPHER W. MORLEDGE, JUDGE |
| | APPELLEE | REVERSED AND REMANDED; CROSS-APPEAL RENDERED MOOT |

## RAYMOND R. ABRAMSON, Judge

This appeal arises from the Phillips County Circuit Court's denial of appellant Marti Johnson's request to increase her ex-husband appellee William Young's child-support payments. Johnson argues that the circuit court erred in not increasing Young's child-support payments by not using the correct method to calculate Young's income and in not finding a material change of circumstances. We agree and reverse and remand for further proceedings.

The parties divorced in December 2005; under the terms of their settlement agreement, Johnson was given primary custody of their two minor children, Young was ordered to pay child support of $800 per month, and Johnson and Young were ordered to equally divide the children's tuition and daycare expenses. On June 16, 2014, Johnson filed a petition to change venue, and for contempt and modification of the previous order against

Young. Johnson contended that the children resided with her in Paragould and the circuit court of Greene County was the most convenient forum; that she had repeatedly been required to bring Young to court because of child-support issues and that he should be found in contempt and punished accordingly; and that there had been a material change warranting an increase in child support. Young responded with a motion to dismiss.

The circuit court denied a change of venue in an order entered on February 11, 2015. An order entered on October 28, 2015, required Young to pay $399 to bring his obligations for medical bills current, and to reimburse Johnson $117 for one of their daughter's braces. It also found Young in contempt for failure to pay financial obligations of his children. The court allowed Johnson to claim both children for tax purposes beginning with the 2015 tax year and also ordered Young to pay Johnson $4,500 for attorney's fees and costs. The court denied Johnson's request for an increase in child support without comment or explanation.

Johnson filed her notice of appeal on November 9, 2015. Young filed a notice of cross-appeal as to the $4,500 attorney's fees on November 10, 2015, but has not filed a brief in this appeal. Young's cross-appeal is therefore rendered moot. On appeal, Johnson contends that (1) the court did not use the correct method to calculate Young's income and (2) the court clearly erred in not modifying Young's child-support obligation as there was a material change in circumstances.

We review child-support cases de novo on the record, but we will not reverse the trial court's findings of fact unless they are clearly erroneous. *Bass v. Bass*, 2011 Ark. App. 753, 387 S.W.3d 218. We have further stated that a circuit court's finding is clearly

SLIP OPINION

erroneous when, despite supporting evidence in the record, the appellate court viewing all of the evidence is left with a definite and firm conviction that a mistake has been committed. *Bethany v. Jones*, 2011 Ark. 67, 378 S.W.3d 731.

The child-support scheme in Arkansas is governed by Arkansas Supreme Court Administrative Order Number 10 ("Administrative Order No. 10"), which includes a family support chart that indicates the amount of support due, depending upon the payor's income. *Id.* A trial court's order awarding child support must recite the amount of support required by the chart and recite whether the court deviated from that amount. *Id.* It is a rebuttable presumption that the amount of child support calculated pursuant to the chart is the appropriate amount. *Id.* If the court deviates from the chart amount, it must include specific written findings stating why, after consideration of all relevant factors including the best interest of the child, the amount is unjust or inappropriate. *Id.*

Young testified at the hearing that he made $6,000 per month. His affidavit of financial means reflects that number, but he includes a $1,225 rent deduction and an $800 deduction for child support for his and Johnson's minor children; neither of these deductions is proper under Administrative Order Number 10. *See* Ark. Sup. Ct. Admin. Order No. 10 (II).[1] There was some discrepancy in testimony as to whether Young was self-employed. It

---

[1]Section II. Definition of Income provides, "Income means any form of payment, periodic or otherwise, due to an individual, regardless of source, including wages, salaries, commissions, bonuses, workers' compensation, disability, payments pursuant to a pension or retirement program, and interest less proper deductions for: 1. Federal and state income tax; 2. Withholding for Social Security (FICA), Medicare, and railroad retirement; 3. Medical insurance paid for dependent children; and 4. Presently paid support for other dependents by court order, regardless of the date of entry of the order or orders." However, number 4 is applicable only to other children who are not born of the marriage at issue.

was undisputed that Young is a partner in two partnerships and that he pays self-employment taxes based on his income from the partnerships, in which he owns a 20 percent interest. Young contends that he is unaware of what his tax records reflect but that he "just signs them." Moreover, Young testified that $20,000 was deposited in his account to pay for taxes.

Young's father, Ned Young, testified that his son is paid $72,000 pretax which is $6,000 a month, and that his "guaranteed payment is $6,000." Ned Young also testified that the company pays his son's child support out of his check. In matters of child support, the definition of income is intentionally broad and designed to encompass the widest range of potential income sources for the support of minor children. *Montgomery v. Bolton*, 349 Ark. 460, 79 S.W.3d 354 (2002); *Stuart v. Stuart*, 99 Ark. App. 358, 260 S.W.3d 740 (2007).

The circuit court did not use the correct method to calculate Young's income. In determining an appropriate amount of child support, it is undisputed that courts are to refer to the family support chart contained in Administrative Order No. 10, which provides a means of calculating child support based on the payor's net income. *Cowell v. Long*, 2013 Ark. App. 311. Young provided no W-2s; he has a partnership interest in the family businesses, pays self-employment taxes, and receives additional income of $20,000 to pay those taxes; therefore, his income for child support should have been determined based on the last two years' federal and state income tax returns. Pursuant to Administrative Order No. 10(III)(c), for self-employed payors, the circuit court should first consider the payor's

---

Here, Young cannot deduct the child support of his two daughters because they are his children with appellant Marti Johnson. Ark. Sup. Ct. Admin. No. Order 10 (II).

tax returns. *See Tucker v. Office of Child Support Enf't*, 368 Ark. 481, 247 S.W.3d 485 (2007).

At the hearing, Young's tax returns for 2012, 2013, and 2014 were introduced into evidence. The tax returns show that Young is a 20 percent partner in two family-owned businesses, Young and Company, and Young's Custom Services, LLC. Both companies are agriculture-related enterprises involving farming and irrigation-well drilling. In Arkansas, a partner may be treated as a self-employed payor for purposes of Administrative Order No. 10. *See Brown v. Brown*, 373 Ark. 333, 338–39, 284 S.W.3d 17, 21–22 (2008) (treating a partner as a self-employed payor under Administrative Order No. 10).[2] Young's 2012 tax returns showed that his adjusted gross income was $177,613, his self-employment tax was $13,806, and his federal taxes totaled $42,665. His 2013 tax returns showed that his adjusted gross income was $228,643, his self-employment tax was $19,010, and his total federal tax liability was $62,176. His 2014 tax returns reflected that his adjusted gross income was $188,166, his self-employment tax was $19,212, and his total federal tax liability was $48,657. Although it is true that the returns were for a married couple filing jointly, the evidence reflected that less than 10 percent of the joint income was attributable to his wife.

If the circuit court determines that the tax returns are unreliable, then it shall make specific findings explaining the basis for its determination and shall then proceed using the net-worth method. *Id*. Where the trial court relies on the tax record, there is no need for it to consider the net-worth approach. *See Cowell, supra.* Although due deference is given to a circuit court's superior position to determine the credibility of the witnesses and the weight

---

[2]*Brown* was overruled on other grounds by *Moore v. Moore*, 2016 Ark. 105, at 12, 486 S.W.3d 766, 772.

to be accorded to their testimony, no deference is given to that court's conclusion of law. *Chitwood v. Chitwood*, 2014 Ark. 182, 433 S.W.3d 245. There is no authority to skip this step. The trial court, without explanation, found that Young's "true income" was $3,300 per month—or $39,600 annually.

Specifically, section (III)(c) of Administrative Order No. 10 addresses the determination of self-employed payors. It provides that for self-employed payors, support shall be calculated based on the last two years' federal and state income tax returns and the quarterly estimates for the current year. A self-employed payor's income should include contributions made to retirement plans, alimony paid, and self-employed health insurance paid; this figure appears on line 22 of the current federal income tax form. If the payor's tax returns are found to be unreliable, the court shall then consider the amount the payor is capable of earning or a net-worth approach based on property, lifestyle, etc. *Tucker*, *supra*.

Young and his father testified that Young's income was $72,000 a year and that he drew a check for $3,500 to $3,600 a month.[3] The circuit court clearly erred in determining Young's income. Based on the evidence before us, it is unclear how the circuit court arrived at Young's "true income" of $3,300 a month. His tax returns reflect something much larger. In fact, Young paid more than his purported annual salary of $39,600 in federal income taxes alone. Other than his testimony that he is unaware of what is reflected on his tax returns, Young provided no proof to reflect his true income and admitted that he signed his tax returns. His own affidavit of financial means reflects a monthly income of $6,000. The

---

[3] The testimony indicated that the $3,500–$3,600 monthly amount was after the child support had been taken out of his salary.

circuit court made no findings that the tax returns are unreliable and did not attempt to proceed to the next step of Administrative Order No. 10 concerning the net-worth approach. Because the circuit court did not follow the approach mandated by Administrative Order No. 10 and *Tucker, supra*, we reverse and remand for findings of fact consistent with this opinion.

Johnson's second point on appeal is that the circuit court clearly erred in not modifying Young's child-support payments. A court reconsiders a child-support award when there has been a material change in circumstances. *Hill v. Kelly*, 368 Ark. 200, 207, 243 S.W.3d 886, 891 (2006). This is true even when the parents agreed to the amount of child support, as the parties did in this case. *See Harris v. Harris*, 82 Ark. App. 321, 326, 107 S.W.3d 897, 900–01 (2003). The question whether there has been a material change in circumstances is governed by Arkansas Code Annotated section 9-14-107(a)(1) (Repl. 2015), which provides as follows:

> A change in gross income of the payor in an amount equal to or more than twenty percent (20%) or more than one hundred dollars ($100) per month shall constitute a material change of circumstances sufficient to petition the court for modification of child support according to the family support chart after appropriate deductions.

But even if the payor's income has not changed that much, there may still be a material change in circumstances. Factors include, but are not limited to, the passage of time, remarriage, the children's ages, income changes, the parties' finances, debts, ability to meet current and future obligations, and the child-support chart. *McCoy v. Kincade*, 2015 Ark. 389, at 3, 473 S.W.3d 8, 10; *Baber v. Baber*, 2011 Ark. 40, at 15, 378 S.W.3d 699, 707; *Hill*, 368 Ark. at 207, 243 S.W.3d at 891.

The parties agreed to $800 a month in 2005 when their children were much younger, and that amount correlated to an income of $3,150 per month under the then existing support chart for two children. The evidence presented to the circuit court in 2015 showed that the children are not only older, but they are involved in more activities, and their needs and expenses are greater. The parties' daughters are now participating in cheerleading, volleyball, dance, and other activities. Their league dues are $1,300 per season, and travel to out-of-town tournaments is $1,500 per season, plus equipment and other costs. However, it is not apparent from the record whether the circuit court found a material change of circumstances; therefore, we remand to the circuit court to make a finding. The circuit court should consider either the statutory definition of "material change" or the factor-based analysis in its determination, or both.

Since the circuit court did not follow the procedure required by Administrative Order No. 10, it miscalculated Young's income. We are consequently left with a definite and firm conviction that a mistake has been committed. We hold that the circuit court clearly erred in its determination of the amount of child support owed by Young. Accordingly, we reverse and remand for further proceedings consistent with this opinion.

Reversed and remanded; cross-appeal rendered moot.

VIRDEN and GLADWIN, JJ., agree.

*Brett D. Watson, Attorney at Law, PLLC*, by: *Brett D. Watson* and *Benson Law Firm, P.A.*, by: *King Benson*, for appellant.

No response.