SLIP OPINION

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV–15–1058

|  |  |  |
|---|---|---|
| | | **Opinion Delivered** February 22, 2017 |
| JASON BOYD | | |
| | APPELLANT | APPEAL FROM THE CRAIGHEAD COUNTY CIRCUIT COURT, WESTERN DISTRICT [NO. DR–2014–165] |
| V. | | |
| CANDACE CROCKER AND OFFICE OF CHILD SUPPORT ENFORCEMENT | | HONORABLE PAMELA HONEYCUTT, JUDGE |
| | APPELLEES | AFFIRMED |

## PHILLIP T. WHITEAKER, Judge

Appellant Jason Boyd appeals the order of the Craighead County Circuit Court imputing income to him and ordering him to pay child support based on that imputed figure. Boyd contends that the circuit court erred as a matter of law in its application of the "net-worth method" of calculating income for a self-employed payor.[1] We affirm.

Boyd and appellee Candace Crocker were engaged in a relationship that led to the birth of a child, G.B. Crocker filed a petition to establish paternity. Boyd admitted that he was G.B.'s father, but the parties litigated the issues of visitation, custody, and child support. The

---

[1] The Office of Child Support Enforcement filed a motion to intervene in the circuit court pursuant to Arkansas Code Annotated section 9-14-210(d) because Crocker was receiving services under Title IV-D of the Social Security Act. The circuit court granted the motion to intervene. While OCSE is thus a named party in this appeal, it has not filed a brief.

circuit court granted custody of G.B. to Crocker, set a visitation schedule for Boyd, and set the amount of child support. Boyd does not appeal the court's rulings on custody or visitation; rather, his only issue on appeal pertains to the issue of child support.

In determining an appropriate amount of child support, courts are to refer to the family support chart contained in Supreme Court Administrative Order Number 10, which provides a means of calculating child support based on the payor's net income. *Browning v. Browning*, 2015 Ark. App. 104, 455 S.W.3d 863; *Cowell v. Long*, 2013 Ark. App. 311. The definition of income is intentionally broad and is designed to encompass the widest range of potential income sources for the support of minor children. *Montgomery v. Bolton*, 349 Ark. 460, 79 S.W.3d 354 (2002); *Stuart v. Stuart*, 99 Ark. App. 358, 260 S.W.3d 740 (2007). Case law has specifically held, however, that the definition of income for purposes of support may differ from income for tax purposes. *See Stuart, supra*; *Huey v. Huey*, 90 Ark. App. 98, 204 S.W.3d 92 (2005); *Delacey v. Delacey*, 85 Ark. App. 419, 155 S.W.3d 701 (2004); *Brown v. Brown*, 76 Ark. App. 494, 68 S.W.3d 316 (2002).

Our standard of review for an appeal from a child-support order is de novo on the record, and we will not reverse a finding of fact by the circuit court unless it is clearly erroneous. *Hall v. Hall*, 2013 Ark. 330, 429 S.W.3d 219; *Brown v. Brown*, 2014 Ark. App. 455, 440 S.W.3d 361. In reviewing a circuit court's findings, we give due deference to that court's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony. *Brown, supra*. Moreover, it is the province of the trier of fact to resolve conflicting testimony. *Crismon v. Crismon*, 72 Ark. App. 116, 34 S.W.3d 763 (2000).

As a rule, when the amount of child support is at issue, we will not reverse the circuit court absent an abuse of discretion. *Id*. However, a circuit court's conclusion of law is given no deference on appeal. *Id*. With these standards in mind, we examine the evidence received by the circuit court and its rulings on the issue of child support.

The circuit court had undisputed evidence that Boyd was a self-employed farmer for purposes of calculating child support. With respect to Boyd's income, Crocker took the position at trial that Boyd lived an extravagant lifestyle and could pay a higher amount of child support. Boyd, in contrast, contended that his monthly income for calculating child support was only $3,500, based on his affidavit of financial means. To support their respective positions, Crocker and Boyd presented evidence of Boyd's bank records, tax returns, and lifestyle.

Concerning Boyd's bank records, bank statements from his family's farming business, dated March 2013 through December 2014, were introduced into evidence. Total monthly deposits by Boyd into that bank account ranged from $3,500 to more than $10,000. Bank records from his personal checking account, dating from February 2013 to December 2014, reflected deposits ranging from $5,000 to nearly $25,000 per month and total withdrawals or expenditures ranging from $4,900 to over $20,000 per month. In response to this evidence of deposits and withdrawals from his accounts, Boyd did not disagree that he had deposited $131,594 into his checking account in 2013 and had not paid taxes on the money. He also did not disagree that an average figure of "about $14,731 per month" had been deposited into his checking accounts during 2014. Although Boyd testified that the deposits into his account

SLIP OPINION

were "not all income," he also stated that he did not "have a source of income other than this Boyd Farms checking account." Despite the wide range of deposits and the large number of months in which deposits in excess of $10,000 were made, Boyd asked the court to find his monthly income to be $3,500, based on his affidavit of financial means.

With respect to his tax returns, Boyd contended that his records for the last three years showed that he had a negative income on his tax returns and that he had "not paid any taxes lately." The last time he recalled paying taxes was "probably four years ago." Boyd claimed losses of $285,000 in 2012 and "about $200,000" in each of the last two years, but he was not certain whether the losses were "a personal loss or a Boyd Farm loss or what." Citing his 2012 Arkansas income tax form, Boyd claimed as his total income negative $252,000. He was "honestly not sure" whether he had told the IRS that his income was a negative $200,000 to $300,000 per year. He further asserted that he "[did]n't deal with the accounting" and hadn't "had to pay in any income taxes in the last two years." He did not "recall reporting [his] income to Social Security."

The court also heard evidence about Boyd's lifestyle. Boyd testified that he was living in a house that he had just built for approximately $55,000 on land that he owned. He bought a new truck in 2014 for $50,000 and had an $800 per month car payment. He recently sold a boat for $51,500 and recently bought a camper and an ATV for $20,000 and $18,000 respectively. He sold a four-wheeler in 2014 for $7,000, and he sold his house in Paragould for $275,000 "because [he] couldn't afford the mortgage." Boyd also admitted that he used his personal checking account to pay expenses on things like a housekeeper, truck accessories,

boat insurance, lake visits and hotel rooms, payments on his several vehicles, construction of his house, and, eventually, child-support payments of $400 per month.[2]

Based on the evidence presented at the hearing, the circuit court imputed monthly income of $11,105 to Boyd and set his child-support payments at $1,606 per month. Boyd timely appealed the circuit court's ruling, and he now argues that the circuit court erred in the methodology used to calculate his income.

On appeal, Boyd argues that the circuit court committed reversible error in calculating his child-support obligation as a self-employed person. Pursuant to Administrative Order No. 10(III)(c), for self-employed payors like Boyd, "support shall be calculated based on the last two years' federal and state income tax returns and the quarterly estimates for the current year. . . ." Here, the court found that Boyd was self-employed, had a farming operation with his father, and had "reported a large loss of income on his tax returns for several years, although he claims to have no personal knowledge of his finances with regard to income taxes." Noting that Boyd's 2014 tax returns were not available, the court specifically found that his 2012 and 2013 returns were unreliable.[3] Pursuant to Administrative Oder No. 10 (III)(c), when a court finds a self-employed person's tax returns unreliable, "the court shall consider the amount the payor is capable of earning or a net worth approach based on property, life-style, etc." Administrative Order No. 10 then advises that, "[f]or 'clarification of the procedure for

---

[2] A temporary order entered prior to the hearing had set child support at $400 per month.

[3] Boyd does not challenge the court's finding that his tax returns were unreliable.

determining child support by using the net-worth method,' see *Tucker v. Office of Child Support Enforcement*, 368 Ark. 481, 247 S.W.3d 485 (2007)."

In *Tucker, supra*, the supreme court cited *Holland v. United States*, 348 U.S. 121 (1954), to set forth the "net-worth method" of calculating income. As described in *Tucker*, the "net-worth method" involves "establishing a beginning net worth at the start of the relevant period and an ending net worth at the end of the period and considers living expenses and allowed deductions for the same period." *Tucker*, 368 Ark. at 488, 247 S.W.3d at 491 (citing *Holland*, 348 U.S. at 125). The court then established the procedure a circuit court should employ:

> If the circuit court determines that the tax returns are unreliable, then it shall make specific findings explaining the basis of its determination. The circuit court shall then proceed using the net-worth method. The circuit court shall establish a beginning net worth at the start of the relevant period and an ending net worth at the end of the period, considering living expenses and allowable deductions for the same period. *See Holland*, 348 U.S. at 125, 75 S. Ct. 127. Additionally, the circuit court shall consider the following factors: (1) the impact of inflation or deflation on the payor's net worth; (2) liquidity of the payor's assets; (3) the payor's cash flow; (4) the payor's current and long-term financial obligations; (5) the payor's lifestyle; and (6) any other relevant factors. After determining the payor's disposable income, the circuit court shall calculate child support in accordance with the child-support guidelines

*Id*. at 490, 247 S.W.3d at 492.

In this case, Boyd argues that the circuit court "did not employ the correct analysis" set out in *Tucker*. Boyd complains on appeal that the court erred in determining his income because it failed to establish a beginning net worth and an ending net worth before considering the factors set out in Administrative Order No. 10. He claims that it is "erroneous as a matter of law" to "recite the factors without applying them to the beginning and ending net worth in the applicable period." He relies on *Colley v. Colley*, 2014 Ark. App. 698, 450

S.W.3d 274, as holding that *Tucker* requires a circuit court to determine beginning and ending net worth for the relevant period and then to consider the factors.

We are unable to agree with Boyd's contentions. Here, after finding that Boyd's tax returns were unreliable, the circuit court expressly acknowledged that it was to use the net-worth method; however, the court found, based on the facts presented to it, that it did not have sufficient evidence of Boyd's net worth to be able to utilize that mechanism. The court therefore stated that it considered Boyd's assets and lifestyle, the amount of money deposited into his personal checking account, his testimony, and his affidavits of financial means in making a determination as to Boyd's income. The court determined that Boyd's affidavit of financial means was inconsistent with both his tax returns and his lifestyle, noting that, during a time when Boyd claimed losses in income of $200,000, he had built and paid cash for a house, lived an exorbitant lifestyle, and purchased new boats and other vehicles for him and his girlfriend. The court concluded as follows:

> [The] evidence provided at trial was insufficient to determine [Boyd's] total net worth in any given year. [The] best evidence provided to the court to determine his net income for child support purposes were his bank statements, which contained monthly deposits, for which he personally paid zero (0) in taxes. Nor were any farming expenses paid which were not reimbursed by him from these funds. The court will not allow a deduction for income tax in this case, because [Boyd] testified that he has not paid taxes in years. The court finds that the best evidence of [Boyd's] income were the deposits into his personal account. In addition, the profit [Boyd] made from the sale of his home is income pursuant to Administrative Order No. 10. [Boyd's] bank records for his personal account, not including assets he pays for from the business/farm account, reflect $139,294.70 in deposits in 2013, and $116,141.44 in deposits in 2014. The court finds averaging [Boyd's] monthly deposits into his personal account a reasonable way to determine his income for purposes of child support. The statements and deposits before the court are from January of 2013 through November of 2014. The average monthly deposit amount is $11,105.00.

SLIP OPINION

Accordingly, the court set Boyd's support obligation at $1,606 per month. We conclude that the best evidence the court had was Boyd's bank records, and it considered the relevant two years' worth of information that they provided, as well as the factors set forth in Administrative Order No. 10, to discern a realistic assessment of Boyd's income. On the record before us, we are unable to say that the circuit court's approach and conclusions were clearly erroneous.

Boyd also briefly complains that the circuit court erred by failing to give "proper consideration" to facts that Boyd asserts decreased his net worth. Here, he cites his own testimony about the farm's alleged financial losses and crop loans. Again, however, we are unable to find reversible error on the circuit court's part. Apart from Boyd's failure to cite to convincing authority on this point, *see Louisiana v. Joint Pipeline Grp.*, 2010 Ark. 374, at 37, 373 S.W.3d 292, 314, his complaint essentially goes to the weight and credibility that the circuit court assigned to the evidence presented to it. It is axiomatic that we defer to the circuit court's findings as to the weight of the evidence and credibility of the parties. *See, e.g.*, *Ingle v. Ingle*, 2013 Ark. App. 660.

Affirmed.

VAUGHT and MURPHY, JJ., agree.

*Bristow & Richardson, PLLC*, by: *Kristofer E. Richardson*, for appellant.

*Tiner, Cobb & Byars*, by: *Kara L. Byars*, for appellee.