BART F. VIRDEN, Judge
Appellant Melanie Fischer (Jaskiewicz) appeals from the Saline County Circuit Court's order granting her petition to modify child support. On appeal, Melanie argues that the trial court erred in modifying child support based solely on appellee Michael Fischer's affidavit of financial means (AFM), which resulted in a "meager" increase in child support, and that the trial court instead should have averaged Michael's income over the last three or four years.[1] We find no error and affirm.
I. Procedural History
The parties were married in October 1997 and divorced in May 2011. Melanie was awarded custody of their three children, and Michael was ordered to pay $1,703 biweekly child support.[2] On November 15, 2016, Melanie filed a petition to modify child support, alleging that there had been a material change in circumstances in that Michael's income had increased. The trial court granted Melanie's petition in part. She filed a motion for reconsideration, which was deemed denied.
II. Administrative Order No. 10
In determining an appropriate amount of child support, courts are to refer to the most recent revision of the family-support chart in Arkansas Supreme Court Administrative Order Number 10, which provides a means of calculating child support based on the payor's net income. Ark. Code Ann. § 9-12-312(a)(3)(A) (Repl. 2015). There is a rebuttable presumption that the amount of child support contained in the family-support chart is the correct amount of child support to be awarded. Ark. Code Ann. § 9-12-312(a)(3)(B) ; Ark. Sup. Ct. Admin. Order No. 10(I). "Income" means any form *603 of payment, periodic or otherwise, due to an individual, regardless of source, including wages, salaries, commissions, bonuses, workers' compensation, disability, payments pursuant to a pension or retirement program, and interest less proper deductions. Ark. Sup. Ct. Admin. Order No. 10(II)(a). The definition of "income" is "intentionally broad and is designed to encompass the widest range of sources consistent with this State's policy to interpret 'income' broadly for the benefit of the child." Id.; Evans v. Tillery , 361 Ark. 63, 70, 204 S.W.3d 547, 552 (2005) (quoting Ford v. Ford , 347 Ark. 485, 495, 65 S.W.3d 432, 439 (2002) ). The affidavit of financial means shall be used in all family-support matters. Ark. Sup. Ct. Admin. Order No. 10(IV).
III. Hearing Testimony
Michael Fischer testified that he is a doctor employed by Practice Plus. He explained that he works as a hospitalist for Baptist Hospital ("Baptist") in North Little Rock. He stated that he is a W-2 employee and is paid biweekly but that he also earns 1099 income from working for hospitals other than Baptist. Michael stated that he sometimes receives bonuses from Baptist depending on his collections for the month but that he had "not really made a bonus from them in a long time." He testified that, even though he had not been ordered to do so, he had paid Melanie a portion of his quarterly bonuses and 1099 income in 2015 and 2016 because "it was the right thing to do." Evidence of those additional payments was submitted, including three checks written to Melanie in 2015 totaling $7,390 and three checks written in 2016 totaling $5,500.
Michael also submitted federal income-tax returns, plus exhibits, for 2014, 2015, and 2016. His 2014 tax return, filed jointly with his current spouse, reflected an adjusted gross annual income of $373,942, including a net profit of $1,673 from his chart-review business. His 2015 tax return, also filed jointly with his spouse, showed an adjusted gross annual income of $430,550, including a net business profit of $43,510 from his 1099 income. Michael's 2016 tax return, filed separately from his spouse, showed an adjusted gross annual income of $288,487, including a net profit of $20,827 from his 1099 income.
Michael stated that his 1099 income had decreased because the non-Baptist hospitals had "a full complement of full-time hospitalists" and did not need him. Michael said that his 2016 income was not as much as before because (1) there was no extra work available, (2) there had been "a decrease in reimbursements on my regular job," (3) given "the current situation with Medicare and all," physicians are not being paid as much as in the past, and (4) "Medicaid has had cuts over the years." He insisted that he would have worked more if he could have but that he could not.
Michael's AFM was introduced into evidence. It reflects gross wages per pay period in the amount of $10,128.74 and $3,841.02 in deductions, leaving him with a net biweekly income of $6,287.72. Under a section entitled "Other Income," Michael wrote that another source was "other jobs" and that the amount was $0 but "variable." He testified that when he filled out the AFM, he had not done any extra work but that he had since worked a couple of nights at Saline Memorial Hospital, which is not owned by Baptist. Michael attached to his AFM three pay stubs from Baptist dated March 9 and 23, 2017, and April 6, 2017, reflecting current total gross wages of $13,128.74, $11,928.74, and $10,128.74, respectively. Michael explained that the totals were different because one of the checks reflected work he had done for a Baptist-owned hospital in Hot Spring *604 County. Michael agreed that his pay varied from month to month.
IV. Trial Court's Order
The trial court rejected Melanie's argument that an average of Michael's income over the last four years should be used to calculate child support.[3] It also rejected Melanie's assertion that Michael's AFM is not a true reflection of his average biweekly income. The trial court determined that there had been a material change in Michael's income sufficient to warrant an upward modification of his child-support obligation.
Relevant here, the family-support chart provides that, when a payor's net biweekly[4] income is $2,000, he or she shall pay $493 for three dependents and $425 for two dependents. Ark. Sup. Ct. Admin. Order No. 10. When income exceeds the chart, the percentage of the payor's biweekly income in excess of $2,000 to be paid as support is twenty-five percent for three dependents and twenty-one percent for two dependents. Ark. Sup. Ct. Admin. Order No. 10(III)(b). A support order may include as its basis a percentage of a bonus to be received in the future. Ark. Sup. Ct. Admin. Order No. 10(II)(b). The percentage owed for two dependents is twenty-one percent of the payor's net bonus. Id. The child support attributable to a bonus amount is in addition to the periodic child-support obligation. Id.
The trial court determined that Michael's net biweekly income was $6,287.72. Referencing the family-support chart, the trial court found that Michael owed $1,565 biweekly support for three dependents until the oldest child turned eighteen on August 24, 2017.[5] The trial court found that Michael will then owe $1,393.42 biweekly support for two dependents ("$493 maximum support for three children based on $2000 bi-weekly income + 21% of $4287.72 ($6287.72-$2000) = $1393.42").[6] The trial court further ordered Michael to pay twenty-one percent of any net bonuses and 1099 income as they accrue.
V. Standard of Review
We review an appeal from a child-support order de novo on the record, but we will not reverse a finding of fact by the trial court unless it is clearly erroneous. Boyd v. Crocker , 2017 Ark. App. 108, 513 S.W.3d 302. In reviewing a trial court's findings, we give due deference to that court's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony. Id. As a rule, when the amount of child support is at issue, we will not reverse the trial court absent an abuse of discretion; however, a trial court's conclusion of law is given no deference on appeal. Id.
VI. Discussion
Melanie argues that the trial court erred in basing its modification of child support on what she asserts is Michael's "incorrect" AFM instead of averaging his income over the last three or four years given that Michael's income fluctuated *605 and he earned both W-2 and 1099 income.[7] Melanie argues that the trial court should have followed the Arkansas Supreme Court's "rule" set forth in Taylor v. Taylor , 369 Ark. 31, 250 S.W.3d 232 (2007).[8] In Taylor , it was undisputed that the payor's weekly income fluctuated. The trial court averaged the payor's income over a seven-week period, which was how long he had worked at his current job. In affirming the trial court's child-support order, the supreme court stated that the trial court's calculation of an average over a seven-week period was reasonable and that the award was not an abuse of discretion. Moreover, the Arkansas Supreme Court cited with approval the method used by this court in Delacey v. Delacey , 85 Ark. App. 419, 155 S.W.3d 701 (2004).
In Delacey , the trial court calculated the payor's monthly income using only his November 2002 earnings. The payor, a doctor employed by a clinic, argued that November was his second-highest producing month of 2002 and that, because his pay varied from month to month, the trial court should have used a monthly average of his 2002, or his 2001, income, rather than relying on one particular month. This court agreed and reversed the child-support award. We noted that the payor's net income fluctuated considerably in that it ranged between $19,389 and $30,418 per month in 2001 and between $20,970 and $26,454 per month in 2002. We said that this did not give an accurate picture of the payor's income generally. This court noted that there had been no Arkansas case approving or disapproving a method for calculating income when a payor's income fluctuates from month to month and that it was not addressed by Administrative Order No. 10. Despite the lack of precedent, this court held that the payor's income should have been calculated by averaging his monthly earnings. We stated, "Common sense dictates that an average of appellant's monthly income over a year or two years will present a truer picture of his income than a calculation derived solely by reference to one of his highest earning months." Delacey , 85 Ark. App. at 428, 155 S.W.3d at 706. This court remanded the matter for the trial court to recalculate child support.
Taylor was decided eleven years ago. Although our supreme court has amended Administrative Order No. 10 several times since the Taylor decision, it has not amended the order to require trial courts to use a specific method of calculating support when a payor's income fluctuates and to set parameters on when the calculation must be used. See, e.g. , Grady v. Grady , 295 Ark. 94, 747 S.W.2d 77 (1988) (holding led to our supreme court's inclusion of the "imputed income" section in the Arkansas Child Support Guidelines). Also, although our supreme court in Taylor said that a method of averaging monthly earnings over a period of one or two years "had merit," it affirmed the trial court's averaging a payor's income over only a seven-week period.
*606 It is the ultimate task of the trial court to determine the expendable income of a child-support payor. Delacey , supra. The only evidence of Michael's income over multiple years was his tax returns. There was testimony from which the trial court could have determined that Michael's tax returns, while not unreliable, did not present an accurate picture of his current expendable income due to changes in the healthcare industry. The only portion of Administrative Order No. 10 that directs the trial court to utilize a payor's tax returns to calculate support is the section involving self-employed payors, a finding not made with respect to Michael. In that instance, the trial court must examine the last two years' federal and state income-tax returns and quarterly estimates for the current year. Because the trial court was required to consult Administrative Order No. 10 for guidance, and there is no provision that requires an averaging method of calculating support when a payor's income fluctuates, we cannot say that the trial court erred as a matter of law in not using Michael's tax returns to average his income over a three- or four-year period.
Here, the trial court considered all the evidence, including Michael's income-tax returns, his AFM, and his testimony, and determined Michael's expendable income. Using Michael's most current financial information from his AFM, the trial court referred to and followed the family-support chart and ordered an amount of child support that is presumed reasonable. Under these circumstances, we cannot say that the trial court abused its discretion in setting the amount of child support.
Affirmed.
Harrison and Klappenbach, JJ., agree.

Michael did not file a responsive brief.

The parties appeared to agree below that the amount was reduced to $1,526 in 2014.

In her motion for reconsideration, Melanie sought an average of Michael's income over a three-year period.

Biweekly means a payor is paid once every two weeks or twenty-six times during a calendar year. Ark. Sup. Ct. Admin. Order No. 10(III)(a).

The trial court's order was entered August 30, 2017.

The trial court mistakenly used the figure meant for three children ($493) when it should have been for two children ($425). Michael, however, did not file a cross-appeal, and we will not grant affirmative relief that has not been requested. Hanshaw v. Blair , 2011 Ark. App. 30.

Melanie includes a single sentence in the conclusion section of her argument asserting that Michael's AFM is "incorrect," but she does not explain in what respect it is incorrect-only that it is not an average over at least a two-year period. We will not address an argument that is not supported by any legal authority, and the failure to cite authority or make a convincing argument is sufficient reason for affirmance. Garcia v. Garcia , 2018 Ark. App. 146, 544 S.W.3d 96.

Counsel also cites and discusses an unpublished opinion in violation of Supreme Court Rule 5-2(c), which provides that such opinions shall not be cited, quoted, or referred to in any argument. See also One Bank & Trust, N.A. v. Lenderman , 2017 Ark. App. 42, 512 S.W.3d 651.