Cite as 2020 Ark. App. 63

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-18-968

| | | |
|---|---|---|
| SHANE PERRY | | **Opinion Delivered:** January 29, 2020 |
| | APPELLANT | APPEAL FROM THE BENTON COUNTY CIRCUIT COURT [NO. 04DR-17-9] |
| V. | | |
| BRANDIE PERRY | | HONORABLE DOUG SCHRANTZ, JUDGE |
| | APPELLEE | |
| | | AFFIRMED |

## MIKE MURPHY, Judge

Appellant Shane Perry appeals from the decree of divorce granting appellee Brandie Perry a divorce. He asserts two points on appeal: (1) that the circuit court abused its discretion in imputing his income and setting his monthly child-support obligation at $3793; and (2) that the circuit court abused its discretion in awarding Brandie $167,236 representing one-half of the parties' marital interest in GKS Properties. We affirm.

Shane and Brandie were married in July 2002 and divorced in July 2018. They have four children together. Relevant to this appeal, before Shane and Brandie were married, Shane owned an interest in a general partnership with his brother and father, GKS Properties. During the marriage, Shane and his brother purchased their father's interest in GKS Properties for $275,000. At the time of the final hearing, GKS Properties had about $50,000 on deposit in a bank account. Also relevant to this appeal, after Brandie filed for divorce and before the final hearing, Shane lost his job at Walmart where he earned

$250,000 a year. After a hearing at which the court heard testimony concerning the parties' various business ventures and Shane's employment, the court imputed income to both parties to calculate each parties' child-support obligation to the other and offset those amounts. Shane was ordered to pay Brandie $3000 a month in child support.

The court further found that a substantial interest in GKS Properties had been acquired during the marriage with a represented value of $275,000 but that it would be impractical to divide that interest considering the nature of the partnership. The court ordered Shane to pay Brandie $167,236 out of his share of his 401k representing one-half of the parties' marital interest in GKS Properties.

Shane now appeals, arguing that the court erred when it imputed his income to calculate child support and that it further erred when it found that any portion of GKS Properties was marital property.

I. *Child Support*

We review an appeal from a child-support order de novo on the record, but we will not reverse a finding of fact by the circuit court unless it is clearly erroneous. *Fischer v. Fischer*, 2018 Ark. App. 519, at 6, 563 S.W.3d 601, 604. In reviewing a circuit court's findings, we give due deference to that court's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony. *Id*. As a rule, when the amount of child support is at issue, we will not reverse the circuit court absent an abuse of discretion. *Id*.

In determining an appropriate amount of child support, courts are to refer to the most recent revision of the family-support chart in Arkansas Supreme Court Administrative

2

Order No. 10, which provides a means of calculating child support based on the basis of the payor's net income. Ark. Code Ann. § 9-12-312(a)(3)(A) (Repl. 2015). There is a rebuttable presumption that the amount of child support contained in the family-support chart is the correct amount of child support to be awarded. Ark. Code Ann. § 9-12-312(a)(3)(B); Ark. Sup. Ct. Admin. Order No. 10(I). "Income" means any form of payment, periodic or otherwise, due to an individual, regardless of source, including wages, salaries, commissions, bonuses, workers' compensation, disability, payments pursuant to a pension or retirement program, and interest, less proper deductions. Ark. Sup. Ct. Admin. Order No. 10(II)(a). The definition of "income" is "intentionally broad and is designed to encompass the widest range of sources consistent with this State's policy to interpret 'income' broadly for the benefit of the child." *Id.* The affidavit of financial means shall be used in all family-support matters. Ark. Sup. Ct. Admin. Order No. 10(IV).

Shane first argues that it was error for the circuit court to calculate the child-support obligation by imputing income. Regarding imputed income, Administrative Order No. 10 provides that:

> [i]f a payor is unemployed or working below full earning capacity, the court may consider the reasons therefor. If earnings are reduced as a matter of choice and not for reasonable cause, the court may attribute income to a payor up to his or her earning capacity, including consideration of the payor's life-style. Income of at least minimum wage shall be attributed to a payor ordered to pay child support.

Ark. Sup. Ct. Admin. Order No. 10(III)(d).

Shane contends that his income was not reduced as a matter of choice—he was fired—thus, the circuit court had no authority to impute income. However, when there is a change in employment, the imputation of income is not automatic. *Grady v. Grady*, 295

3

Ark. 94, 97, 747 S.W.2d 77, 78 (1988). A court may, in proper circumstances, impute an income to a spouse according to what could be earned by the use of his best efforts to gain employment suitable to his capabilities. *Langston v. Brown*, 2016 Ark. App. 535, at 10, 506 S.W.3d 261, 268. Considering $250,000 was Shane's salary before he lost his job at Walmart, it was not an abuse of discretion for the circuit court to use that as the benchmark for Shane's earning capabilities. Here, the evidence demonstrated that Shane was capable of making that much annually, but Shane also testified that he was not open to moving outside of Northwest Arkansas for a job at the time because he wanted to maintain the flexibility to spend time with his children. Furthermore, Shane's various affidavits of financial means introduced indicate that he has several business ventures including rental properties, a farm, and an interest in a liquor store; his own law practice; and substantial savings and assets. The decision whether to impute income depends on the circumstances of the case and is a matter that lies within the sound discretion of the circuit court. *See, e.g., Grady, supra*; *Langston, supra*. Accordingly, even though Shane lost his job at Walmart, given the circumstances in this case, it was not an abuse of discretion for the court to impute an income of $250,000 to Shane for the benefit of his children.

Shane contends that, under the Arkansas Family Support Chart, he should owe Brandie $25 a month, not $3000. As mentioned, the circuit court imputed an annual income of $250,000 to Shane. The circuit court imputed an annual income of $40,000 to Brandie. Using those figures, the court then calculated that Shane would owe a presumptive child support amount of $3793 a month to Brandie and Brandie would owe $793 a month to Shane. The circuit court then offset Brandie's support obligation against Shane's to arrive at

a final chart-based order of child support for Shane of $3000 a month. This award was also consistent with the temporary order previously entered. Chart-based support is presumed to be correct and reasonable. *Waldon v. Waldon*, 34 Ark. App. 118, 122, 806 S.W.2d 387, 389 (1991). Offsetting the parents' chart-based support obligation like the circuit court did here is consistent with common practice in joint-custody situations. *See, e.g.*, *Grimsley v. Drewyor*, 2019 Ark. App. 218, 575 S.W.3d 636. It was not an abuse of discretion for the circuit court to order Shane to pay $3000 a month in child support.

## II. *GKS Properties*

For his second point, Shane challenges the unequal distribution of his 401k as a result of his acquisition of an additional interest in GKS Properties that was acquired during the marriage. At trial, Brandie specifically claimed a marital interest in the 17 percent stake in GKS that was acquired during the marriage. At the hearing, Shane explained that GKS bought out Shane's father's interest and that he had signed a promissory note. The court noted that there was no evidence of what effect this had on Shane's interest. The court found that "a substantial interest in GKS Properties was acquired during the marriage with a represented value of $275,000." The court further found, however, that it would be inequitable and impractical to award Brandie an interest in the partnership. The court then made an unequal division of one of Shane's retirement accounts after taking into consideration the statutory factors required by Arkansas Code Annotated section 9-12-315 (Repl. 2015).

Divorce cases are reviewed de novo. *Kelly v. Kelly*, 2011 Ark. 259, at 5–6, 381 S.W.3d 817, 822–23. With respect to the division of property, we review the circuit court's

5

findings of fact and affirm them unless they are clearly erroneous or against the preponderance of the evidence; the division of property itself is also reviewed, and the same standard applies. *Id.* A finding is clearly erroneous when the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed. *Id.* In order to demonstrate that the circuit court's ruling was erroneous, the appellant must show that the circuit court abused its discretion by making a decision that was arbitrary or groundless. *Id.*

On appeal, Shane argues that there was no evidence presented that he recognized a $275,000 gain in connection with the partnership, the transaction was funded by nonmarital property, and any gain of nonmarital property remains nonmarital; alternatively, Shane argues that the acquisition was a gift.

The circuit court noted that Shane failed to put on proof about the value of the newly acquired interest in GKS. At the hearing, Shane testified that in 2011, he and his brother purchased their father's interest in GKS Properties for the sum of $275,000, "and we executed a promissory note that same day for that amount." That was the only figure with which the circuit court had to work. Shane argues that the new interest in GKS was acquired with nonmarital funds; however, "marital property" is statutorily defined, and it means all property acquired by either spouse subsequent to the marriage. Ark. Code Ann. § 9-12-315(b). There are only a few exceptions to this rule:

> (1) Property acquired prior to marriage or by gift or by reason of the death of another, including, but not limited to, life insurance proceeds, payments made under a deferred compensation plan, or an individual retirement account, and property acquired by right of survivorship, by a trust distribution, by bequest or inheritance, or by a payable on death or a transfer on death arrangement;

6

(2) Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise, or descent;

(3) Property acquired by a spouse after a decree of divorce from bed and board;

(4) Property excluded by valid agreement of the parties;

(5) The increase in value of property acquired prior to marriage or by gift or by reason of the death of another, including, but not limited to, life insurance proceeds, payments made under a deferred compensation plan, or an individual retirement account, and property acquired by right of survivorship, by a trust distribution, by bequest or inheritance, or by a payable on death or a transfer on death arrangement, or in exchange therefor;

(6) Benefits received or to be received from a workers' compensation claim, personal injury claim, or Social Security claim when those benefits are for any degree of permanent disability or future medical expenses; and

(7) Income from property owned prior to the marriage or from property acquired by gift or by reason of the death of another, including, but not limited to, life insurance proceeds, payments made under a deferred compensation plan, or an individual retirement account, and property acquired by right of survivorship, by a trust distribution, by bequest or inheritance, or by a payable on death or a transfer on death arrangement, or in exchange therefor.

Ark. Code Ann. § 9-12-315(b).

Shane and his brother executed a promissory note for $275,000 in exchange for their father's interest in GKS Properties. To the extent that either spouse acquires an enforceable right during the marriage, that spouse acquires marital property. *Kelly*, 2011 Ark. 259, at 7, 381 S.W.3d at 823. The only question, then, is to ask if that marital property falls within one of the exceptions. *Kelly*, is instructive.

In *Kelly*, the wife obtained some stock in a company, TRM, from her father during the marriage. *Id*. Her brother also received stock in TRM at the same time. TRM's corporate resolution provided that $50,000 in capital was contributed—$22,500 from the wife and $27,500 from her brother—but the money was not actually contributed when

7

TRM was formed. *Id.* at 16, 381 S.W.3d at 828. Instead, it was on TRM's books as a note receivable for the shares, despite neither sibling having signed any notes for the indebtedness. *Id.*

Roughly three years after the shares had been issued, the father's accountant advised that the sum needed to be paid and removed from TRM's books. *Id.* To that end, $50,000 was paid to the siblings from dividends earned from another company in which they were also shareholders. *Id.* Those dividends were the undisputed nonmarital property of the wife. *See Kelly*, *supra.* The circuit court found that the stock interest in TRM was nonmarital property, and the husband appealed. *Id.* at 2, 381 S.W.3d at 819.

On appeal, our supreme court agreed with the husband that the TRM stock was marital property. *Id.* at 8, 381 S.W.3d at 824. After making note of the exceptions listed in Arkansas Code Annotated section 9-12-315, the court explained that because the wife acquired the stock in exchange for a note, she necessarily did not acquire it in exchange for the considerations listed in subsections (2) or (7). *Kelly*, 2011 Ark. 259, at 6–8, 381 S.W.3d at 823–24. Nor did it matter to the court that she paid on the note with separate nonmarital funds. *Id.*

Here, like in *Kelly*, a note was exchanged for shares of stock. In *Kelly*, our supreme court did not accept the argument that paying that note with nonmarital funds changed the character of the property, and we do not accept it now. *See McGahhey v. McGahhey*, 2018 Ark. App. 597, 567 S.W.3d 522 (rejecting similar arguments); *see also Grimsley*, 2019 Ark. App. 218, 575 S.W.3d 636 (same).

Shane contends, alternatively, that the interest acquired was a gift and therefore subject to exception. The supreme court rejected this argument in *Kelly* as well:

> Neither do we consider the stock a gift. A gift is a voluntary transfer of property, without valuable consideration, to another. *See Davis v. Jackson*, 232 Ark. 953, 341 S.W.2d 762 (1961). In the instant case, it is not disputed that a note receivable for Christy's shares was on the TRM books. While Christy also contends that the payment of that note with nonmarital funds rendered the stock nonmarital under section 9-12-315(b)(2) and (7), her contention is without merit. Christy's stock was not acquired in exchange for nonmarital property or income; instead, at the time it was acquired, it was exchanged for a note receivable.

*Kelly*, 2011 Ark. 259, at 8, 381 S.W.3d at 824.

It was not clear error for the circuit court to find that there was some portion of GKS that was marital. Nor was it error for the circuit court to consider that when making an unequal distribution by awarding Shane all the interest in GKS and awarding Brandie a portion of Shane's 401k.

The circuit court has broad powers to distribute property in order to achieve an equitable distribution. *Keathley v. Keathley*, 76 Ark. App. 150, 157, 61 S.W.3d 219, 224 (2001). The overriding purpose of the property-division statute is to enable the court to make a division of property that is fair and equitable under the circumstances. *Id*. An unequal division of marital property will not be reversed unless it is clearly erroneous. *Id*.

Arkansas Code Annotated section 9-12-315(a)(1) provides:

> (A) All marital property shall be distributed one-half (½) to each party unless the court finds such a division to be inequitable. In that event the court shall make some other division that the court deems equitable taking into consideration:
>
> (i) The length of the marriage;
>
> (ii) Age, health, and station in life of the parties;
>
> (iii) Occupation of the parties;

9

(iv) Amount and sources of income;

(v) Vocational skills;

(vi) Employability;

(vii) Estate, liabilities, and needs of each party and opportunity of each for further acquisition of capital assets and income;

(viii) Contribution of each party in acquisition, preservation, or appreciation of marital property, including services as a homemaker; and

(ix) The federal income tax consequences of the court's division of property.

(B) When property is divided pursuant to the foregoing considerations the court must state its basis and reasons for not dividing the marital property equally between the parties, and the basis and reasons should be recited in the order entered in the matter.

Here, the court considered these factors in writing and especially considered Brandie's employability and the "contribution of marital assets in the acquisition of [Shane]'s additional interests in GKS Properties from the evidence presented in this matter."

Our property-division statute does not compel mathematical precision in the distribution of property; its overriding purpose is to enable the court to make a division that is fair and equitable under the circumstances. *Kelly v. Kelly*, 2014 Ark. 543, at 8–9, 453 S.W.3d 655, 661. Under these circumstances, the circuit court's unequal division was not clear error.

Affirmed.

GRUBER, C.J., and ABRAMSON, J., agree.

*Kezhaya Law PLC*, by: *Matthew A. Kezhaya*, for appellant.

*Cullen & Co., PLLC*, by: *Tim Cullen*, for appellee.