Cite as 2022 Ark. App. 114

# ARKANSAS COURT OF APPEALS
## DIVISION II
### No. CV-21-224

| | |
|---|---|
| ASHLEY OLINGHOUSE<br><br>APPELLANT<br><br>V.<br><br>PHILLIP OLINGHOUSE<br><br>APPELLEE | Opinion Delivered March 9, 2022<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SEVENTEENTH DIVISION [NO. 60DR-09-1158]<br><br>HONORABLE MACKIE M. PIERCE, JUDGE<br><br>AFFIRMED |

**RAYMOND R. ABRAMSON, Judge**

This post-decree divorce case involves issues of modification of child support and contempt. Our court decided a previous appeal in this case in 2015. *See Olinghouse v. Olinghouse*, 2015 Ark. App. 545, 473 S.W.3d 26. The case has remained closed and inactive since the mandate in that appeal issued on October 30, 2015.

The matter was reopened when appellant Ashley Olinghouse ("Ashley") filed a motion for contempt on November 27, 2018. In the motion, Ashley alleged her ex-husband, appellee Phillip Tatum Olinghouse ("Tate"), was in contempt for willfully failing to pay any child support on bonuses as required by paragraph 6 of the 2009 divorce decree and willfully failing to provide copies of his W-2s within fifteen days of receipt and copies of his tax returns within fifteen days of filing since 2015 as required by paragraph 7 of the decree.

Upon receiving these documents, Ashley subsequently filed on January 28, 2020, a motion for modification of child support, motion for contempt for failure to pay child support on all bonuses, and for reimbursement of expenses for the child. She filed a supplement to this motion on June 19, 2020.

After a hearing on all pending motions held on September 3, 2020, the circuit court entered an order on January 28, 2021. The order on Ashley's motions for contempt and for modification of child support was a final judgment entered by the circuit court. It was also a civil-contempt order, which imposed a sanction and constituted the final disposition of the contempt matter. Ashley timely appealed, arguing the circuit court abused its discretion by not ordering the correct amount of child support. We disagree and affirm.

The standard of review for an appeal from a child-support order is de novo; however, as a rule, we will not reverse a circuit court's decision regarding the amount of child support absent an abuse of discretion. *Perry v. Perry*, 2020 Ark. App. 63, at 2, 594 S.W.3d 126, 129. Abuse of discretion means the circuit court's discretion was "improvidently exercised, i.e., exercised thoughtlessly and without due consideration." *E.g.*, *Buckley v. Summerville*, 2018 Ark. App. 100, at 5, 543 S.W.3d 534, 538.

The child-support scheme in Arkansas is governed by Arkansas Supreme Court Administrative Order No. 10, which includes a family-support chart that sets the amount of support due based on the payor's income. *Johnson v. Young*, 2017 Ark. App. 132, 515 S.W.3d 159. It is a rebuttable presumption that the amount contained in the family-support chart is

2

the correct amount of child support to be awarded. Ark. Code Ann. § 9-12-312(a)(3)(C) (Repl. 2020).

We also cannot reverse a finding of fact by the circuit court unless the finding is clearly erroneous, giving due deference to the lower court's superior position to judge the credibility of the witnesses and the weight to be accorded to their testimony. *Hall v. Hall*, 2013 Ark. 330, 429 S.W.3d 219. A finding is clearly erroneous only if the reviewing court, on the entire evidence, is left with a definite and firm conviction that a mistake has been made. *McKinney v. McKinney*, 94 Ark. App. 100, 104, 226 S.W.3d 37, 41 (2006).

Ashley first argues that the circuit court abused its discretion in determining the amount of child support owed pursuant to the Arkansas family-support chart. Arkansas Supreme Court Administrative Order No. 10 contains the child-support guidelines (the Guidelines) applicable to judicial awards of child support. Ark. Sup. Ct. Admin. Order No. 10(I). The Guidelines include the family-support chart ("the Chart") and the child-support worksheet, which are used to calculate the correct amount of child support. *Id.* The new Guidelines were issued on April 2, 2020, and became effective for all support orders entered after June 30, 2020. *See In re Implementation of Revised Admin. Order No. 10*, 2020 Ark. 131, at 1 (per curiam).

The amount of child support calculated pursuant to the most recent revision of the Chart is presumed to be the correct amount of child support to award in any judicial proceeding involving child support. *See* Ark. Sup. Ct. Admin. Order No. 10(II). "The child-support obligation for incomes above $30,000.00 per month shall be determined by using

3

the highest amount in these Guidelines." *Id.* The word "shall," when used in a court rule, means that mandatory compliance is required. *Loyd v. Knight*, 288 Ark. 474, 477, 706 S.W.2d 393, 395 (1986) (confirming that use of the word "shall" when used in a statute means that the legislature intended mandatory compliance with the statute unless such an interpretation would lead to an absurdity); *Williams v. State*, 347 Ark. 728, 756, 67 S.W.3d 548, 565 (2002) (explaining that court rules are construed using the same means that are used to interpret statutes).

The circuit court is required to award the highest amount reflected by the Chart in accordance with the Guidelines unless the court, in its discretion, finds that an additional amount of child support is necessary to meet the needs of the child, taking into account the parents' ability to provide support. Ark. Sup. Ct. Admin. Order No. 10(II). In the instant case, Ashley failed to rebut the presumption. Therefore, the circuit court did not abuse its discretion by ordering the presumptively correct amount of child support.

The Chart reflects the presumptively correct amount, not the minimum amount, of child support to be awarded. Ashley misconstrues the language in the Guidelines regarding the "base level of child support." The supreme court did not intend for the Chart amount to be a minimum; the Guidelines are clear that the amount in the Chart, after all applicable adjustments on the child-support worksheet, is presumed to be correct. *Id.* In fact, a deviation from the Chart "should be the exception rather than the rule." *Id.* § (II)(2).[1]

---

[1]In *Parnell v. Arkansas Department of Finance & Administration, Office of Child Support Enforcement*, 2022 Ark. 52, ___ S.W.3d ___, decided March 3, 2022, our supreme court

4

The circuit court considered all available income of both parties. Ashley admits that the lower court complied with the Guidelines by making findings regarding each party's income and determining the presumed amount of support. The circuit court determined that Ashley's gross monthly income is $9,745.55. Ashley does not argue that the circuit court's finding regarding her income is clearly erroneous, and it is identical to the amount of monthly income reflected on Ashley's child-support worksheet. The circuit court determined that Tate's gross monthly income, including his nonperiodic income, is $47,935.17. In light of these findings, the circuit court set Tate's child-support obligation at $1,610.84 a month beginning on February 1, 2021.

On appeal, Ashley does not allege clear error in the court's finding that Tate's total monthly income is $47,935.17. Instead, she argues that the circuit court erred in not ordering Tate to pay a percentage of his variable income as child support. However, pursuant to the Guidelines, variable income such as commissions, bonuses, overtime pay, military bonuses, and dividends shall be averaged by the court over a reasonable period of time consistent with the circumstances of the case and added to a parent's fixed salary or wages to determine gross income. When income is received on an irregular, nonrecurring, or one-time basis, the court may, but is not required to, average or prorate the income over a reasonable specified period of time or require the parent to pay as a one-time support amount a percentage of his or her nonrecurring income. Ark. Sup. Ct. Admin. Order No. 10(II)(2).

---

reiterated this point and highlighted the factors the circuit court should consider when making a deviation.

The Guidelines distinguish variable income that is typically received on a recurring basis–such as "commissions, bonuses, [and] overtime pay"–from income received on a nonrecurring basis–such as "an inheritance, gambling or lottery winning, or liquidating a Certificate of Deposit." *Id.* The Guidelines state that the circuit court "shall" average recurring variable income and add it to gross wages, while the Guidelines state that the circuit court "may" average nonrecurring income and add it to the gross wages. *Id.* The word "shall" means that mandatory compliance is required, while use of the word "may" indicates the directive is permissive or discretionary rather than mandatory. *Hopper v. Garner*, 328 Ark. 516, 525, 944 S.W.2d 540, 545 (1997); *Loyd*, 288 Ark. at 477, 706 S.W.2d at 395. The Guidelines make an obvious distinction as to how the circuit court is to address the two types of income. While the circuit court is required to include variable income within a parent's monthly gross income, the circuit court is not required to include nonrecurring income within a parent's monthly gross income. *See Hopper*, 328 Ark. at 525, 944 S.W.2d at 545; *Loyd*, 288 Ark. at 477, 706 S.W.2d at 395; *Williams*, 347 Ark. at 756, 67 S.W.3d at 565.

Here, Tate's income consists of a base salary plus variable income, including bonuses, commissions, stock awards, and "renewal incentives," which are akin to commissions. Tate receives variable income numerous times a year. In 2018, Tate received bonuses, commissions, and restricted stock units twenty-two times. His variable income comprises at least half of his compensation. Accordingly, his variable income is not received on an "irregular, nonrecurring, or one-time basis." The circuit court was therefore required to determine Tate's monthly gross income by including his variable income and ordering child

6

support paid on that calculated amount; here, the circuit court did so in compliance with the Guidelines.

On appeal, Ashley further argues that the amount of child support set by the circuit court was "unjust" based on the relative percentages of the parties' incomes that they allegedly spend on the child. We do not find her argument persuasive. The goal of the Guidelines is not to ensure that each parent is responsible for paying the same percentage of the child's expenses. *See* Ark. Sup. Ct. Admin. Order No. 10(I)(V)(1). Pursuant to the Guidelines, $1,952 (the highest amount in the Chart) is the presumptively correct amount of child support to be shared by the parties to meet the child's needs. *Id.* § (II). Ashley's share of the parties' child-support obligation per the Chart is $346.40 a month, which is 17.7 percent of the total obligation. Tate's presumptive share of the parties' child-support obligation is $1,703.84, which is 87.3 percent of the total obligation. Taking into account the $93-per-month deviation,[2] Tate's percentage of the total obligation is reduced to 82.3 percent. This is consistent with the parties' respective shares of their total income: 17 percent for Ashley and 83 percent for Tate. The Guidelines—which state that deviation should be the exception, not the rule—do not support Ashley's argument. *See* Ark. Sup. Ct. Admin. Order No. 10(II)(2).

Ashley next argues that the circuit court abused its discretion by failing to consider Tate's ability to pay more child support than ordered. The only reference in the Guidelines

---

[2]This deviation, which Ashley does not challenge on appeal, stems from previous findings by the circuit court based on the amount of time Tate spends with the child.

7

to a parent's ability to pay additional support is one sentence in section (II), which states: "The child-support obligation for incomes above $30,000.00 per month shall be determined by using the highest amount in these Guidelines. The court may then use its discretion in setting an amount above that to meets [sic] the needs of the child and the parent's ability to provide support." Ark. Sup. Ct. Admin. Order No. 10(II). The Guidelines do not state which parent's ability to provide support should be considered. *See id.*

The circuit court stated that it was not the Supreme Court's intent to "cap" child support at $1,952 a month, particularly for parents with large monthly incomes, but found that the child-support obligation in this case met the child's needs. We cannot say there was an abuse of discretion in ordering Tate to pay the presumptively correct amount of child support pursuant to the Chart.

Ashley next argues that the effect of the circuit court's order was to decrease Tate's child-support obligation rather than to increase it as requested in her motion. As a result of Ashley's motion, Tate's child-support obligation increased from $1,119 a month to $1,610.84 a month. However, Ashley argues that the circuit court's failure to order Tate to pay a percentage of his variable income as additional child support has the practical effect of decreasing the amount of child support she will receive each month.

The circuit court last set child support in this case on September 10, 2012, under the previously applicable child-support guidelines, which were based on the net income of the payor parent only. *See* Ark. Sup. Ct. Admin. Order No. 10 (effective Mar. 11, 2011, through Apr. 2, 2020, for support orders entered after June 30, 2020?). Ashley is one of many payee

parents who may receive less child support as a result of the adoption of the new Guidelines, which now consider both parents' incomes and contain different requirements regarding treatment of variable income. The previous guidelines made no distinction between variable income and nonrecurring income. *In re Amendment to Admin. Order No. 10*, 2011 Ark. 36 (per curiam).

However, the new Guidelines require the circuit court to include Tate's variable income in his monthly gross wages when determining his monthly child-support obligation rather than excluding that income from the monthly calculation and ordering additional child support paid as the variable income is received. This requirement eliminates the need for Tate to make separate child-support payments throughout the year upon receipt of variable income. The change in the way Tate's child-support obligation is structured in this case is due to the changes to the Guidelines, not to an abuse of the circuit court's discretion.

In her third point on appeal, Ashley argues that the circuit court abused its discretion by failing to deviate from the presumptively correct amount of child support set by the Guidelines after taking into consideration a list of alleged "Expenses for Minor Child," which she introduced as plaintiff's exhibit 6 at trial. These alleged expenses of the child include (1) household expenses; (2) health insurance and medical expenses; and (3) private-school expenses. Ashley first seeks additional child support based on standard household expenses that are already factored into the amount of child support set by the Guidelines. Ashley claims she should be awarded an upward deviation in child support based on a

percentage of her mortgage payment, household expenses, media expenses, utilities, and food as set forth in plaintiff's exhibit 6.

The circuit court found that these expenses are already considered in the amount of child support assessed in the Chart. Among the expenditures considered in the Guidelines are housing (including mortgage payments and utilities), food, transportation, entertainment (including expenses for media equipment and services), apparel, and other household expenses (including educational fees). *Id.* The Guidelines and the child-support worksheet assume that the payee parent is spending his or her calculated share directly on the child. Ark. Sup. Ct. Admin. Order No. 10(I).

If the circuit court had granted an upward deviation based on the expenses reflected in plaintiff's exhibit 6, the parties' respective shares would not be spent directly on the child but rather on Ashley's household as a whole. Accordingly, the circuit court correctly declined to deviate on this basis, finding that "the majority of the expenses listed in Plaintiff's Exhibit 6 are not extraordinary expenses of the child but rather are standard living expenses incurred by every household . . . ." We cannot say that the circuit court abused its discretion in this finding.

Finally, Ashley seeks an upward deviation from the Chart based on the child's private-school expenses. While a custodial parent has the right to send his or her child to a private school, the Guidelines do not require a noncustodial parent to be responsible for the associated costs. *Hyden v. Hyden*, 85 Ark. App. 132, 141–42, 148 S.W.3d 748, 753–54 (2004). The circuit court found that the child's private-school expenses were discretionary expenses

that did not support a deviation because the child "does not have any special education needs that require private schooling, and [Ashley] increased the expense associated with the child's education by transferring him to a more expensive school." Ashley chose to remove the child from a school in which he was doing well and place him in a different private school at twice the cost, over Tate's objection.

The circuit court complied with the Guidelines by considering the private-school expenses and did not abuse its discretion by determining that those expenses do not support an upward deviation in child support. Pursuant to the Guidelines, the circuit court must consider whether child support above the highest amount in the Chart is necessary "to meet the needs of the child" prior to deviating from the presumptively correct amount of child support. Ark. Sup. Ct. Admin. Order No. 10(II). Ashley did not allege, or present any evidence, that she would be unable to pay for the child's expenses absent an upward deviation from the Chart. Accordingly, the circuit court did not abuse its discretion by failing to deviate from the presumptively correct amount of child support pursuant to the Chart.

Given the record before us and our standard of review, we affirm the circuit court's determination of child-support obligations in this case.

Affirmed.

HARRISON, C.J., and GLADWIN, J., agree.

*James, House, Swann & Downing, P.A.*, by: *Kayla M. Applegate*, for appellant.

*Dover Dixon Horne PLLC*, by: *Gary B. Rogers* and *Adrienne M. Griffis*, for appellee.